Davis Wright Tremaine LLP
865 S. Figueroa St., Suite 2400
Los Angeles, California 90017-2566
Telephone (213) 633-6800
Fax (213) 633-6899
CARLA A. MCCAULEY (State Bar No. 223910)
  carlamccauley@dwt.com
DIANA PALACIOS (State Bar No. 290923)
  dianapalacios@dwt.com

Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
Telephone (206) 622-3150
Fax: (206) 757-7700
STUART R. DUNWOODY (*pro hac vice*)
  stuartdunwoody@dwt.com

Attorneys for Defendant and Counter-Claimant
HOUGHTON MIFFLIN HARCOURT
PUBLISHING COMPANY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDGE GAMES, LLC a California Limited Liability Company,<br><br>        Plaintiff,<br><br>   vs.<br><br>HOUGHTON MIFFLIN HARCOURT PUBLISHING COMPANY, a Massachusetts Corporation; and DOES 1-10,<br><br>        Defendants.<br><br>HOUGHTON MIFFLIN HARCOURT PUBLISHING COMPANY, a Massachusetts Corporation,<br><br>        Counter-Claimant,<br><br>   vs.<br><br>EDGE GAMES, LLC a California Limited Liability Company,<br><br>        Counter-Defendant. | Case No. CV13-02123 VAP (DTBx)<br><br>**[PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW OF DEFENDANT [L.R. 56-1]**<br><br>[Notice of Motion and Motion; Declarations with Exhibits 1 through 29; Under Seal and Public Versions of Declarations of Weisman and Pampinella and Ex. 30; Application to Seal; Notice of Lodging; [proposed] Judgment and [proposed] Order concurrently submitted]<br><br>Date: May 4, 2015<br>Time: 2:00 p.m.<br>Court: 2 |

Pursuant to Local Rule 56-1, Defendant and Counter-Claimant Houghton Mifflin Harcourt ("HMH ") provides this Statement of Uncontroverted Facts and Conclusions of Law, setting forth facts material to its Motion for Summary Judgment or, Alternatively, Motion for Summary Adjudication of Issues, as to which it contends there is no genuine dispute.

## I.   STATEMENT OF UNCONTROVERTED FACTS

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| **A.     History and Background of Edge Games, LLC** | | |
| 1. | Edge Games, LLC ("Edge Games") was formed in 2006 for the purpose of marketing and selling Science-Fusion products. | McCauley Decl. ¶ 4, Ex. 14 Deposition of Edge Games' Rule 30(b)(6) designee, Andrew Leach ("Leach Depo.") at 6:17-7:8; 13:3-5, 24:14-20, Depo. Ex. 1; McCauley Decl. ¶ 5, Ex. 15 Deposition of Timothy Pelzel Vol. I ("T. Pelzel Depo. I") 49:4-12. |
| 2. | The creators of the game "Science-Fusion The Elements of the Scienauts" are Tim Pelzel and Andrew Leach, both of whom have been managing members of Edge Games at various times from its formation to the present. | Leach Depo. 8:14-18, 10:25-11:4, 15:2-4, 15:12-13, 44:5-6; T. Pelzel Depo. I at 28:21-29:10, 33:3-14. |
| 3. | Ray Pelzel, Tim Pelzel's uncle, is the primary investor in and also a member of Edge Games LLC. | Leach 16:21-25, 63:10-15; McCauley Decl. ¶ 7, Ex. 17 Deposition of Raymond Pelzel ("R. Pelzel Depo.") at 5:4-7, 18:19-24, 32:19-25. |
| 4. | Andrew Leach has lived in the Lakeport, California area his entire life. | Leach Depo. at 32:14-17. |

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| 5. | Tim Pelzel lived most of his adult life in Lakeport and Santa Rosa, California until moving to Washington in 2013. | T. Pelzel Depo. I at 8:10-15; 9:1-11. |
| **B. Design and Naming of the Game "Science-Fusion The Elements of Scienauts"** | | |
| 6. | Edge Games began manufacturing, marketing and selling its Science-Fusion The Elements of the Scienauts game in 2006. | Leach Depo. at 59:23-25, 66:7-67:2, 153:21-154:5 and Depo. Ex. 2; 68:5-10; T. Pelzel Depo. I at 156:4-9 and Depo. Ex. 2. |
| 7. | Tim Pelzel and Andrew Leach came up with the name Science-Fusion The Elements of Scienauts for their game. | Leach Depo. at 47:25-48:5. |
| 8. | The "Starter Game Set" of Science-Fusion The Elements of Scienauts sells for $29.00 and includes 15 Elements of the Scienauts playing cards, each depicting a character based on one of the elements in the periodic table of elements; plus a game board, dice and dice cups. | Leach Depo. at 69:24-70:2; 95:12-96:10 and Depo. Ex. 7. |
| 9. | Thirteen separate "faction packs" are available for sale at $7.00 a piece, each of which contains different categories of element character cards, as well as "mole" cards. | Leach Depo. at 52:1-11, 69:14-70:9, 96:11-21; T. Pelzel Depo. I at 107:13-22, 155:6-8; McCauley Decl. ¶ 15 Ex. 25. |
| 10. | In order to have all character cards to play the game, a consumer would have to purchase the Starter Game Set and the 10 additional faction packs not included in the Starter Game Set (*i.e.*, Rare Earth Lanthanides, Non-Metals and Transition Metal A). | Leach Depo. at 95:12-96:21 and Depo. Ex. 7; McCauley Decl. ¶ 3, Ex. 12 (lodged sample game) and Exs. 13 and 23. |

STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| 11. | The Starter Game Set that Edge Games sells is packaged in a game box that is illustrated with a miniature stylized periodic table comprising the different element character cards, hand-drawn pictures of some of the game characters. | Leach Depo. at 66:7-12, 70:10-18, 71:10-21 and Depo. Ex. 2 at 6-10; 98:9-11; McCauley Decl. ¶ 3 Ex. 12 (lodged sample game). |
| 12. | On the top of the Starter Game Set box, the words "Science-Fusion The Elements of the Scienauts The Game About the Periodic Table™", in orange and white, with the word "Scienauts" most prominent. | Leach Depo. at 66:7-12, 70:10-18, 71:10-21 and Depo. Ex. 2 at 6-8; 98:9-12, 100:2-16, 101:22-102:10; McCauley Decl. ¶ 3 Ex. 12 (lodged sample game). |
| 13. | One side of the box features similar wording as the box top, and also "Edge Games LLC" in blue block lettering. | Leach Depo. at 98:9-12, 100:9-11, 102:2-10, Depo. Ex. 2 at 10; McCauley Decl. ¶ 3 Ex. 12 (lodged sample game). |
| 14. | On the box top, a circular logo in blue with the words "Science-fusion the Elements of the Scienauts" surrounding the logo appears above the game name. | Leach Depo. at 98:9-12, 100:9-11, Depo. Ex. 2 at 6, 8; McCauley Decl. ¶ 3 Ex. 12 (lodged sample game). |
| 15. | The faction packs have similar graphics as the starter game box top, and feature the word "Scienauts" in large font as well as the name Edge Games LLC, with the "Science-Fusion" mark in less prominent typeset. | Leach Depo. at 256:22-25, 261:23-262:3 and Depo. Ex. 2 at 11-14; T. Pelzel Depo. I at 153:8-11, 154:5-23 and Depo. Ex. 2 at 11-14; McCauley Decl. ¶ 3 Ex. 13. |
| 16. | Each "element" card features a drawing of a character that is based on a chemical element, as well as details concerning the character's features and strengths drawn from information about that element from the periodic table of the elements. | Leach Depo. 69:24-70:2; McCauley Decl. ¶ 3 Ex. 12 (lodged sample game); Exs. 23, 25. |

STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW

DWT 26534499v4 0096293-000007

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| 17. | Edge Games' mark is just one part of the much longer product title "Science-Fusion The Elements of the Scienauts The Game About The Periodic Table". | McCauley Decl. ¶ 3 Ex. 12 (lodged sample game); Leach Depo. at 263:12-265:17. |
| 18. | Edge Games sells the Science-Fusion the Elements of the Scienauts game by telling customers "Science-Fusion, fuse real facts with real fun." | Leach Depo. at 260:14-23, 261:6-11. |
| **C.** | **Marketing Channels and Sales of Science Fusion** | |
| 19. | Edge Games marketed its game through game trade shows from 2006 to 2009, but cannot say how many games were sold through trade shows. | Leach Depo. at 152:21-24, 153:5-154:1, 165:18-167:12; T. Pelzel Depo. at 193:13-194:14, 194:20-195:1, 196:3-7. |
| 20. | In an interview at a trade show, Edge Games' Andrew Leach denied that the game was educational. | Leach Depo. at 263:12-265:17 and Depo. Ex. 30; Lodged Exhibit 30. |
| 21. | Edge Games advertised its game in Games Quarterly, a magazine about games, in 2006, 2007 and possibly 2008. | Leach Depo. at 131:16-132:2, 132:23-133:9, 133:22-25; T. Pelzel Depo. I at 190:10-25. |
| 22. | Edge Games paid to advertise its game in 2005, 2006, 2007 and 2009. | T. Pelzel Depo. I at 187:9-12. |
| 23. | Boardgamegeek.com, a website that reviews games, also listed information about the game, although the description of the game is no longer on the site. | Leach Depo. at 134:5-16, 135:20-24, 136:11-25 and Depo. Ex. 9. |
| 24. | Commentators who have posted reviews of Science-Fusion, the Elements of the Scienauts online at boardgamegeek.com have criticized the game as "poorly executed" and "awful". | McCauley Decl. ¶ 9 Ex. 19. |

4

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| 25. | Other commentators who have posted reviews of Science-Fusion, the Elements of the Scienauts online at boargamegeek.com have also questioned the price point for the game. | McCauley Decl. ¶ 16 Ex. 26. |
| 26. | The only review for Science-Fusion, the Elements of the Scienauts on Amazon.com is a one-star review criticizing the game as having "NO science content other than the suggestion of element names and electron energy levels" and being "unplayable." | McCauley ¶ 10 Decl. Ex. 20. |
| 27. | In comments to of the Science-Fusion youtube videos demonstrating how to play the game, one user comments "how is this even a game" and criticizes the game as a "waste of time and money." | McCauley Decl. ¶¶ 11-12 Exs. 21 and 22. |
| 28. | Edge Games offered its game for sale on its website (located at www.science-fusion.com) beginning in 2006, but cannot say how many product units it has sold through its website. | Leach Depo. at 173:23-174:21; T. Pelzel Depo. I at 174:8-11, 176:16-24. |
| 29. | From 2009 to 2012, Edge Games' website was not accessible on the Internet, as any person visiting would be redirected to another website, and as a consequence Edge Games made no sales of its game through its website during the period the website was inaccessible. | T. Pelzel Depo. I at 174:12-17, 175:8-176:5, Declaration of Robert Goldkind ("Goldkind Decl.") ¶¶ 6-7 and Exs. 8 and 9. |
| 30. | From time to time, Edge Game offered its game for sale on eBay from 2011 through 2014, but cannot say how many games it sold through eBay. | Leach Depo. at 185:17-19; T. Pelzel Depo. I at 180:19-24, 181:14-23, 182:3-5, 182:8-14. |

5

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| 31. | Edge Games first began to offer its game for sale on Amazon.com beginning in October or November 2014, but cannot say how many games it has sold through Amazon. | T. Pelzel Depo. I at 182:20-25; Leach Depo. at 186:13-15; R. Pelzel Depo. at 54:4-55:8. |
| 32. | Edge Games' principals personally sold the product to family, friends and acquaintances, local bookstores and game stores, as well as flea markets, festivals and swap meets in California. | Leach Depo. at 167:13-168:12, 184:22-185:16, 224:16-225:24, 251:23-254:15; T. Pelzel Depo. I at 195:2-196:2; McCauley Decl. ¶ 6 Ex. 16 Deposition of Timothy Pelzel Vol. II ("T. Pelzel Depo. II") at 268:17-269:20, 270:1-11. |
| 33. | Edge Games' efforts to market to homeschoolers have been through visiting game trade shows, advertising on Google ads, offering its product for sale on Science-Fusion.com, and visiting a homeschool group in Southern California in approximately 2008 or 2009. | T. Pelzel Depo. II at 270:16-272:16, 272:21-273:24; Leach Depo. at 171:6-10, 172:18-173:3. |
| 34. | Edge Games cannot identify how many games it has sold by marketing the game to parents who homeschool their children. | Leach Depo. at 171:6-173:11. |
| 35. | Edge Games has not employed any sales representatives or distributors to sell its game. | Leach Depo. at 150:8-24, 151:16-18, 152:8-18; T. Pelzel Depo. II at 237:18-20, 238:11-240:15. |
| 36. | Edge Games made a single sale of its game to a school district in May 2007, but could not identify who made the sale or how it was made. | Leach Depo. at 223:2-13, 224:12-15; T. Pelzel Depo. II at 263:24-265:7, 266:24-267:3 and Depo. Ex. 25. |

STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW
DWT 26534499v4 0096293-000007

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| 37. | Andrew Leach sold games to students at Kelseyville High School and Clear Lake High School in the Lakeport area during his substitute teaching assignments. | Leach Depo. at 17:20-23, 18:6-10, 183:1 - 184:15. |
| 38. | Edge Games requested an extension of the initial expert disclosure deadline in this case from December 5, 2014 to January 4, 2015 so that its expert could conduct a likelihood of confusion survey that counsel for Edge Games told the Court was "ready to go, upon the granting of this extension." | McCauley Decl. ¶ 16 Ex. 26 at 5. |
| 39. | Edge Games has not disclosed a report from its survey expert. | McCauley Decl. ¶ 20. |
| 40. | No witness has identified any circumstance in which a customer purchased or failed to purchase an Edge Games product or an HMH product because of confusion between the marks. | Leach Depo. at 256:2-14; T. Pelzel Depo. II at 255:2-257:2; R. Pelzel Depo. at 72:2-73:13, 73:25-74:7, 74:13-17; Smith-Herbst Decl. ¶ 18; McCauley Decl. ¶ 22 Ex. 29 at (Interrogatory Response No. 6). |
| 41. | Edge Games' 30(b)(6) designee Andrew Leach, when questioned on the topic of actual confusion, could not (a) identify by name anyone who was allegedly confused between the marks, (b) state whether any such persons did or did not purchase any products from Edge Games, or how they knew about HMH's textbook, or (c) identify any specific documents that would identify who had allegedly been confused or what they had been confused about. | Leach Depo. at 6:17-7:8, 234:19-25, 235:21-237:19; 241:9-243:8; 245:6-245:16, 268:23-272:23, 273:11-21, 274:11-275:2; 275:9-16 and Depo. Ex. 1 at p. 3, matters for examination 9 to 10. |

STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW

DWT 26534499v4 0096293-000007

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| 42. | Tim Pelzel stated that a co-worker named "Carl" bought a couple games from Tim Pelzel and then "later tried to find us online, and he was overwhelmed with other ScienceFusion Web sites and products and told me that he was very confused as to who -- you know, whether or not we were associated with these other products and he found it difficult." | Pelzel Depo. at 251:18-253:5, 253:18-255:2. |
| 43. | Tim Pelzel was not able to say whether "Carl" was able to locate the Edge Games website, why he was visiting the Internet, or whether he was attempting to make a purchase. | Pelzel Depo. at 251:18-253:5, 253:18-255:2. |
| 44. | Ray Pelzel stated that an engineer he knew said he had a tough time finding Edge Games' website, but acknowledged the engineer did find Edge Games' website, and Mr. Pelzel was not aware of any lost sale that resulted from this occurrence. | R. Pelzel Depo. at 73:25-75:9. |
| 45. | All of the third party witnesses identified in Edge Games' Initial Disclosures as having knowledge of "customer confusion" or sales of Edge Games' game have explained that they were not confused between Edge Games' game and any textbook of HMH. | McCauley Decl. ¶ 21 Ex. 28 at pp. 4-6.  (Initial Disclosures); Declaration of Elisa Prather ¶¶ 4, 6; Declaration of Valerie Slaughter ¶¶ 4, 6; Declaration of Tamsen Nash ¶¶ 4, 6; Declaration of Eliza Wingate ¶¶ 3, 5; Declaration of Corrine Harrison ¶¶ 5-6; Declaration of Cheri Holden ¶¶ 4, 6. |

8

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| 46. | All of the third party witnesses identified in Edge Games' Initial Disclosures as having knowledge of "customer confusion" or sales of Edge Games' game had no familiarity with HMH's *ScienceFusion* textbook program. | McCauley Decl. ¶ 21 Ex. 28 at pp. 4-6.  (Initial Disclosures); Prather Decl. ¶ 4; Slaughter Decl. ¶ 5; Wingate Decl. ¶ 4; Nash Decl. ¶ 5; Holden Decl. ¶ 5; Harrison Decl. ¶ 6. |
| 47. | Since its founding, Edge Games' sole sources of revenue have been sales of games and faction packs. | Leach Depo. at 187:12-18. |
| 48. | Edge Games has never sold any textbooks. | Leach Depo. at 159:5-8; T. Pelzel Depo. II at 250:14-17. |
| 49. | Tim Pelzel authored a short story entitled "The Sweetness of Suffering, An Episode of Science-Fusion", which was published in an anthology entitled *Of Dice and Pen*. | T. Pelzel Depo. I at 58:9-20, 59:1-3, 59:16-18; McCauley Decl. Ex. 23. |
| 50. | Flying Pen Press has sold 416 copies of the *Of Dice and Pen* anthology since 2008 and paid Edge Games publication royalties of $3.96 for Tim Pelzel's story. | T. Pelzel Depo. at 63:2-6, 64:6-9, 64:20-22. |
| 51. | Edge Games contends it has plans to publish other "literature", including a novel, a screenplay and a book called "The Fanciful Book of the Elements", but none of these planned works have been published and all but the screenplay are in draft form. | Leach Depo. at 159:21-161:8 ; T. Pelzel Depo. I at 65:13-66:17, 67:25-68:18, 71:9-18, 74:11-24, 75:8-12 |
| 52. | Edge Games developed a prototype of a game about geography called "Monsters of State", but the game has been in the prototype stage since 2006 and Edge Games has never sold any of the games. | T. Pelzel Depo. I at 68:5-13, 71:19-72:21; Leach Depo. at 114:19-115:2, 117:6-8, 117:17-24. |
| 53. | Edge Games has no other educational products in process other than "Monsters of State". | T. Pelzel Depo. I at 66:8-18. |

9

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| 54. | In 2006, Edge Games sold $5,132.96 of Science-Fusion products. | R. Pelzel Depo. at 51:17-25; T. Pelzel Depo. II at 218:18-219:19, 226:15-227:6 and Depo. Ex. 11. |
| 55. | In 2007, Edge Games sold $7,585.61 of Science-Fusion products. This was its best year of sales. | R. Pelzel Depo. at 51:17-25; T. Pelzel Depo. II at 218:18-219:19, 227:7-9, 227:9 and Depo. Ex. 11. |
| 56. | In 2008, Edge Games' sales of Science-Fusion products dropped to $2,873.79. | R. Pelzel Depo. at 51:17-25, 52:11-16; T. Pelzel Depo. II at 218:18-219:19, 227:12-18, 228:21-230:3 and Depo. Ex. 11. |
| 57. | In 2009, Edge Games' sales of Science-Fusion products dropped to $1,306.44. | R. Pelzel Depo. at 51:17-25, 52:17-21; T. Pelzel Depo. II at 230:4-24 |
| 58. | In 2010, Edge Games' sales of Science-Fusion products dropped to $886.46. | R. Pelzel Depo. at 51:17-25; 53:5-10; T. Pelzel Depo. II at 218:18-219:19, 232:5-10, 232:14-19 and Depo. Ex. 11. |
| 59. | In 2011, Edge Games' sales of Science-Fusion products dropped to $368.39. | R. Pelzel Depo. at 51:17-25, 53:11-16; T. Pelzel Depo. II at 218:18-219:19, 232:25-233:4 and Depo. Ex. 11. |
| 60. | In 2012, Edge Games' sales of Science-Fusion products rose a little bit from the prior year, to $450.87. | R. Pelzel Depo. at 51:17-25; 53:17-22; T. Pelzel Depo. II at 218:18-219:19, 235:20-24 and Depo. Ex. 11. |
| 61. | In 2013, Edge Games sold $298.50 of Science-Fusion products. | R. Pelzel Depo. at 51:17-25, 53:23-54:3; T. Pelzel Depo. II at 218:18-219:19, 235:25-236:7 and Depo. Ex. 11. |

STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW
DWT 26534499v4 0096293-000007

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| 62. | Tim Pelzel estimated that 2014 sales of Science-Fusion products were between $400 and $600. | T. Pelzel Depo. II at 236:8-18. |
| 63. | Edge Games has not made any efforts to license its trademark Science-Fusion and has not generated licensing revenues. | Leach Depo. at 187:12-23; T. Pelzel Depo. I at 38:20-39:1; T. Pelzel Depo. II at 277:20-23. |
| 64. | Edge Games' 30(b)(6) designee Andrew Leach, when questioned on the amount expended by Edge Games on advertising, marketing and promotion of Science-Fusion, could not state how much Edge Games has spent on advertising the game since 2006. | Leach Depo. at 6:17-7:8, 182:16-21, Depo. Ex. 1 at p.3 matter for examination 5. |
| 65. | Edge Games has offered no evidence that it has sustained any lost profits as a result of conduct by HMH. | Leach Depo. at 256:11-14, 274:16-275:2, 275:9-16; T. Pelzel Depo. II at 255:16-257:2. |
| 66. | When asked how its goodwill was damaged, Edge Games' 30(b)(6) designee Andrew Leach said that potential customers wonder if Edge Games has the right to use the mark or is an impostor, but could not identify any persons who expressed such concerns or any lost sales resulting from such concerns. | Leach Depo. at 6:17-7:8, 268:23-272:23, 273:11-21, 274:11-275:2; 275:9-16 Depo. Ex. 1 at p.3 matter for examination 22. |
| 67. | Edge Games did not produce any expert report opining on the value of Edge Games' alleged lost goodwill. | McCauley Decl. ¶ 20. |
| 68. | Edge Games did not produce any expert report opining on a reasonable royalty for use of its mark. | McCauley Decl. ¶ 20. |

STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW
DWT 26534499v4 0096293-000007

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| **D.** | **HMH and Its *ScienceFusion* Textbook Development** | |
| 69. | HMH is a trade and educational publishing house that provides educational products for classrooms for many class subjects, including print and digital content in the form of textbooks, digital courseware, instructional aids and educational assessment; cognitive and development standardized testing products. | Declaration of Peggy Smith-Herbst ("Smith-Herbst Decl.") ¶ 2. |
| 70. | In 2009, HMH started developing a new K-8 textbook program with the object of teaching a broad array of science curriculum, with program materials including write-in textbooks for students, digital curriculum (including interactive lessons, virtual labs, video-based projects and resource materials), lab manuals for grades 6 through 8, instructional flip charts for grades K through 5, picture sorting cards for kindergartners, leveled readers, and teacher manuals and assessment guides. | Smith-Herbst Decl. ¶ 4. |
| 71. | The team who designed the textbook program for HMH initially settled on "Fusion" because the title reflected the fusion of print and digital media that the program would offer, and because "Fusion" translates easily to Spanish. | Smith-Herbst Decl. ¶ 7; Declaration of Don Gagnon ("Gagnon Decl.") ¶ 3. |
| 72. | HMH's trademark paralegal did a trademark search for the title "Fusion", and determined that while it was widely used, it was clear for use as the title of a K-8 textbook program. | Gagnon Decl. ¶ 4 Ex. 6. |

STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| 73. | In November 2009, the team added "Science" to the title, making it *ScienceFusion*, after considering that the school districts and schools to which they would be selling have to choose textbooks for many different elementary and secondary subjects. | Smith-Herbst Decl. ¶ 7; Gagnon Decl. ¶ 5. |
| 74. | No one at HMH had ever heard of Edge Games LLC or its game Science-Fusion The Elements of the Scienauts at the time it was considering the title for its textbook. | Smith-Herbst Decl. ¶ 8; Gagnon Decl. ¶ 6. |
| 75. | HMH did not learn of the existence of Edge Games or the mark Science-Fusion until February 2012, after HMH received a demand letter from a lawyer for Edge Games. | Smith-Herbst Decl. ¶ 8; Gagnon ¶ 6; McCauley Decl. ¶8 and Ex. 18. |
| 76. | In February 2012, HMH employed an investigator to research Edge Games and use of the Science-Fusion mark. | Goldkind Decl. ¶ 2. |
| 77. | During his initial investigation, the investigator could not find any games for sale by Edge Games or any workable contact information for Edge Games. | Goldkind Decl. ¶¶ 4-5, 8 and Exs. 7 and 9. |
| 78. | Those of the program materials that are titled *ScienceFusion* say "ScienceFusion" in bold letters, with the word "Fusion" in large font, and occasionally in a darker color, and the word "Science" generally in smaller font and slightly above the word "Fusion." | Smith-Herbst Decl. ¶ 6 Ex. 1; McCauley Decl. ¶2 Ex. 11 (lodged HMH Science-Fusion Grade 1 textbook). |
| 79. | Most of the program material cover pages feature a corona-like circle, with the dotted "i" in the word "Fusion" reflecting the shimmering light of the corona. | Smith-Herbst Decl. ¶ 6 Ex. 1; McCauley Decl. ¶ 2 Ex. 11 (lodged HMH Science-Fusion Grade 1 textbook). |

STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| 80. | "Houghton Mifflin Harcourt" or "Holt McDougal Publishing" appears in small font immediately below the title of each *ScienceFusion* textbook. | Smith-Herbst Decl. ¶ 6 Ex. 1; McCauley Decl. ¶ 2 Ex. 11 (lodged HMH Science-Fusion Grade 1 textbook). |
| 81. | Different photographs pertaining to various scientific subject matters, including animals, prisms, and space—among others—appear on the covers of the textbooks, teacher's aids and flipcharts. | Smith-Herbst Decl. ¶ 6 Ex. 1; McCauley Decl. ¶ 2 Ex. 11 (lodged HMH Science-Fusion Grade 1 textbook). |
| **E.** | **HMH's Marketing and Sales for the *ScienceFusion* Title** | |
| 82. | HMH sells the majority of its *ScienceFusion* program materials to school districts and schools. | Smith-Herbst Decl. ¶¶ 2, 5, 10, 14. |
| 83. | Approximately twenty states are "adoption states," in which HMH must first obtain formal state approval and adoption of a textbook before school districts within the state may use allotted public funds to purchase it. | Smith-Herbst Decl. ¶ 5. |
| 84. | School districts in California are unlikely to purchase *ScienceFusion* program materials because California has not adopted *ScienceFusion* for use in its schools. | Smith-Herbst Decl. ¶ 5. |
| 85. | HMH markets *ScienceFusion* directly to school districts, but only after obtaining adoption in states where that is necessary. | Smith-Herbst Decl. ¶ 10. |
| 86. | Committees of teachers and other school professionals are typically charged with making decisions about adopting new textbook programs in school districts. | Smith-Herbst Decl. ¶ 10. |
| 87. | Once selected, most schools enter into multi-year agreements to purchase program materials. | Smith-Herbst Decl. ¶ 17. |

STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW

DWT 26534499v4 0096293-000007

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| 88. | The decision to purchase a new textbook program, and to train teachers to use it, is a substantial investment for schools, and the decision-makers give considerable care to their purchasing decisions. | Smith-Herbst Decl. ¶ 17. |
| 89. | HMH uses dedicated sales representatives to sell its *ScienceFusion* program materials. | Smith-Herbst Decl. ¶ 14. |
| 90. | HMH attends science teacher and teaching trade shows, where HMH has displayed a variety of its publications, including *ScienceFusion* program materials. | Smith-Herbst Decl. ¶ 11. |
| 91. | HMH has advertised its textbooks, including *ScienceFusion,* in the programs for the trade shows it attends. | Smith-Herbst Decl. ¶ 11 and Ex. 2. |
| 92. | HMH also has advertised the *ScienceFusion* program in *Science & Children*, a trade publication of the National Science Teachers Association ("NSTA"). | Smith-Herbst Decl. ¶ 13. |
| 93. | HMH ran a digital advertisement for *ScienceFusion* on NSTA's on-line Science Supply Guide in and around 2013. | Smith-Herbst Decl. ¶ 13 and Ex. 3. |
| 94. | HMH has never attended a tradeshow or convention for games, nor has it displayed its *ScienceFusion* program at a game tradeshow or convention, as doing so would not make any strategic sense because *ScienceFusion* is not a game and HMH focuses on teacher trade shows where the professionals who make recommendations to buy textbooks are in the audience. | Smith-Herbst Decl. ¶ 12; Harrison Decl. ¶ 5. |
| 95. | HMH's website offers its *ScienceFusion* textbook program for sale at http://www.hmhco.com. | Smith-Herbst Decl. ¶ 15 and Ex. 4. |

STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| 96. | Many of the products available for purchase on HMH's ecommerce site are limited to institutional accounts. | Smith-Herbst Decl. ¶ 15 and Ex. 4. |
| 97. | *ScienceFusion* textbooks and related materials sold through HMH's website represent 0.11% of HMH's total *ScienceFusion* sales. | Under Seal Declaration of Andrew Weisman ("Weisman Decl.") ¶ 11. |
| 98. | HMH does not sell *ScienceFusion* program materials through brick and mortar stores, bookstores, or eBay. | Smith-Herbst Decl. ¶ 14. |
| 99. | HMH does not sell *ScienceFusion* program materials directly through Amazon with an HMH storefront. | Smith-Herbst Decl. ¶ 16 . |
| 100. | Offerings of *ScienceFusion* program materials on Amazon are by Amazon itself or by third party sellers over whom HMH has no control. | Smith-Herbst Decl. ¶ 16 and Ex. 5. |
| 101. | HMH has sold only a small number of *ScienceFusion* program materials to Amazon.com, representing only 0.0038% of HMH's total *ScienceFusion* sales. | Weisman Decl. ¶ 12. |
| 102. | HMH offers *ScienceFusion* program materials in packages designed for homeschoolers, but these sales represent only 0.21% of HMH's total sales of *ScienceFusion*. | Weisman Decl. ¶ 10; Smith-Herbst Decl. ¶ 16. |
| 103. | HMH has no plans to expand its *ScienceFusion* program beyond a K to 8 textbook and curriculum. | Smith-Herbst Decl. ¶ 19. |
| 104. | HMH is not aware of a single instance of confusion by any customer between HMH's *ScienceFusion* program and Edge Games' game. | Smith-Herbst Decl. ¶ 18. |

STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW
DWT 26534499v4 0096293-000007

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| 105. | HMH is not aware of a single instance when a consumer considered HMH's title to be false or somehow suggestive that the *ScienceFusion* textbook program was sponsored by anyone other than HMH or Holt McDougal (Holt McDougal is one of HMH's sub-publishers and is named on *ScienceFusion* textbooks for grades 6-8). | Smith-Herbst ¶ 18. |
| 106. | HMH and Edge Games sell vastly different products, and sell them to vastly different customers, and are not competitors. | Smith-Herbst ¶ 18; McCauley Decl. Exs. 11 and 12 (lodged textbook and lodged sample game) |
| 107. | HMH has incurred a financial loss on its *ScienceFusion* textbook program from when it first began to make sales in August 2010 through September 30, 2014. | Smith-Herbst Decl. ¶ 9; Declaration of Jim Pampinella ¶¶ 11, 44 and Ex. 30. |
| 108. | Edge Games did not produce an expert report disputing any of the opinions of absence of profit offered by HMH's accounting expert. | McCauley Decl. ¶ 20. |

## II.    CONCLUSIONS OF LAW

### A.    Summary Judgment Standards

1.    The moving party has the initial burden of showing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law by showing the district court that there is an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

2.    Once the moving party shows an absence of evidence to support the plaintiff's case, to survive summary judgment, the non-moving party must present facts to show that it will have sufficient admissible evidence to support a verdict in its favor on every element of every claim for which it has the burden of proof at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW
DWT 26534499v4 0096293-000007

3.     Summary judgment must be granted against a non-moving party who fails to show the existence of admissible evidence to support every element of every claim for which it has the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323.

4.     Summary judgment on the issue of trademark infringement is proper when "'the evidence is clear and tilts heavily in favor' of one party," based on a likelihood-of-confusion analysis. *Stonefire Grill, Inc. v. FGF Brands*, Inc., 987 F. Supp. 2d 1023, 1047 (C.D. Cal. 2013) (quoting *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1075 (9th Cir. 2006)).

5.     Plaintiff Edge Games bears the burden of coming forward with evidence to establish that there is a likelihood of confusion, whether forward or reverse confusion, between its registered trademark and HMH's *ScienceFusion*. *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1081 n.6 (9th Cir. 2005).

**B.    Edge Games' Trademark Infringement Claims**

6.     HMH is entitled to summary judgment because Edge Games has not come forward with sufficient admissible evidence to establish all of the elements of its claims for trademark infringement and unfair competition.

7.     To prevail on its claims for trademark infringement under 15 U.S.C. §§ 1114 and 1125(a), and for violation of Bus. & Prof. Code § 17200 ("Section 17200"), Edge Games must prove that HMH's use of the *ScienceFusion* title creates a likelihood of confusion. *See Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999); *Acad.of Motion Picture Arts & Scs. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991).

8.     Likelihood of confusion is determined using the eight-factor test of *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979). The *Sleekcraft* factors are: (1) strength of the plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Sleekcraft*, 599 F.2d at 348-49.

18

9.     Edge Games cannot prove likelihood of confusion under the *Sleekcraft* factors because the factors weigh in HMH's favor.

10.    Under the first *Sleekcraft* factor, Edge Games' mark is suggestive because it calls to mind a game that Edge Games sells as a way to "fuse real facts with real fun. *Brookfield*, 174 F.3d at 1058 n. 19; *Sleekcraft*, 599 F.2d at 350; *M2 Software*, 421 F.3d at 1081.

11.    Suggestive marks are presumptively weak and "entitled to a restricted range of protection." *Brookfield*, 174 F.3d at 1058; *Sleekcraft*, 599 F.2d at 350.

12.    A mark's incontestable status has no impact on whether it constitutes a conceptually strong mark for purposes of the likelihood of confusion analysis. *Miss World (UK) Ltd. v. Mrs. America Pageants*, 856 F. 2d 1445, 1448-49 (9th Cir. 1988).

13.    Edge Games has not bolstered the low conceptual strength of its mark with commercial success. *M2 Software, Inc*, 421 F.3d at 1081.

14.    There can be no reverse confusion because HMH's marketing efforts have not lent commercial strength to its *ScienceFusion* title such that those efforts have overpowered Edge Games' mark. *Echo Drain v. Newsted*, 307 F. Supp. 2d 1116, 1124-25 (C.D. Cal. 2003).

15.    Under the second *Sleekcraft* factor, Edge's game and HMH's textbooks are not related goods because Edge's game and HMH's textbooks are not complementary, as they are neither used nor promoted together, do not have a similar use or function, and are not sold to the same class of purchasers. *Learning Internet v. Learn.com, Inc.*, No. CV 07–227–AC, 2009 WL 6059550, at *25 (D. Or. Nov. 25, 2009).

16.    Under the third *Sleekcraft* factor, the marks, as they are encountered in the marketplace and taking into account the normal circumstances surrounding purchases of the type of goods they represent, are not similar in sight, sound, or meaning. *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1093 (C.D. Cal. 2003); *Echo Drain*, 307 F. Supp. 2d at 1126; *Herbalife Intl,*

19

*Inc. v. Lumene N.Am. LLC*, No. CV 07-5040 AHM (RCx), 2007 WL 4225776, at *7 (C.D. Cal. Oct. 15, 2007); *Stonefire Grill, Inc.,* 987 F. Supp. 2d at 1053.

17.     Under the fourth *Sleekcraft* factor, Edge Games cannot show actual confusion because it has not provided admissible evidence to show that any person was actually confused.  *Matrix,* 290 F. Supp. 2d at 1093-94; *Echo Drain*, 307 F. Supp. 2d at 1126 (holding none of the evidence suggested the buying public would mistakenly purchase one product believing it was the other); *Stonefire Grill, Inc*., 987 F. Supp. 2d at 1053-54 (eight examples of potential confusion does not support a finding that an appreciable number of consumers confused)

18.     Actual confusion can be demonstrated through survey evidence.  *Cairns v. Franklin Mint Co.,* 24 F.Supp.2d 1013, 1041 (C.D. Cal. 1998) (citing *Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 822 (9th Cir. 1996)).

19.     Edge Games did not conduct a likelihood of confusion survey in connection with this litigation and there is therefore a presumption that the results of any such survey would be unfavorable to Edge Game's position in this litigation. *James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.*, No. SACV 11-1309-DOC (Anx), 2013 WL 655314, at *9 (quoting *Playboy Enters., Inc. v. Netscape Commc'ns. Corp.*, 55 F. Supp. 2d 1070, 1084 (C.D. Cal. 1999), *aff'd*, 202 F.3d 278 (9th Cir. 1999)).

20.     Under the fifth *Sleekcraft* factor, HMH's and Edge Games' marketing channels do not overlap, and their goods are not sold side-by-side.  *M2 Software*, 421 F.3d at 1081; *Accuride,* 871 F.2d at 1537.

21.     Under the sixth *Sleekcraft* factor, consumers of both Edge Games' and HMH's goods exercise care in their selection and purchase process.  *Quia Corp. v. Mattel, Inc*., No. C 10–1902 JF (HRL), 2010 WL 2486364 at *10 (N.D. Cal. June 15, 2010); *Learning Internet,* 2009 WL 6059550, *25.

DWT 26534499v4 0096293-000007

22.     Under the seventh *Sleekcraft* factor, the junior user's intent plays a less important role in reverse confusion cases. *Stark v. Diageo Chateau & Estate Wines Co.*, 907 F. Supp. 2d 1042, 1063 (N.D. Cal. 2012).

23.     HMH adopted *ScienceFusion* as a title for its textbook series in good faith because it was not aware of Edge Games' mark and given the different nature of the products and their distinct marketing channels. *Matrix*, 290 F. Supp. 2d. at 1095 (citing *Secura Comm Consulting Inc. v. Securacom Inc.*, 166 F.3d 182, 188 (3d Cir. 1999)).

24.     Under the eighth *Sleekcraft* factor, HMH's use of *ScienceFusion* is not likely to cause confusion in the foreseeable future, because Edge Games has no plans to expand to sell textbooks and HMH has no plans to expand its *ScienceFusion* title beyond textbooks.  *Surfvivor Media, Inc.v. Survivor Prods.*, 406 F.3d 625, 634 (9th Cir. 2005); *Stonefire Grill*, 987 F. Supp. 2d at 1056.

25.     Edge Games is not entitled to actual damages because it has produced no evidence that it has lost profits because of HMH's conduct.  *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir.1993).

26.     Edge Games is not entitled to corrective advertising because there is no evidence of any harm to its mark.  *Adray v. Adry–Mart Inc.*, 76 F.3d 984, 988 (9th Cir.1995); *Quia Corp. v. Mattel Inc.*, 2011 WL 2749576, at *5 (N.D. Cal. July 14, 2011).

27.     Edge Games is not entitled to a reasonable royalty because Edge Games has never licensed its mark or provided evidence of a reasonable basis for a reasonable royalty.  *M2 Software Inc. v. Viacom Inc.*, 223 F. App'x 653, 655 (9th Cir. 2007; *Quia Corp.*, 2011 WL 2749576, at *6; *Trovan, Ltd. v. Pfizer, Inc.*, No. CV-98-00094 LGB MCX, 2000 WL 709149, at *18 (C.D. Cal. May 24, 2000).

28.     Edge Games is not entitled to HMH's profits related to the use of *ScienceFusion* because it has not carried its burden of establishing that HMH has earned a profit on *ScienceFusion*. *Lindy Pen*, 982 F.2d at 1408.

29.     Edge Games is not entitled to HMH's profits as a measure of damages suffered by Edge Games because Edge Games and HMH do not compete.  Moreover, an award of the defendant's profits is inappropriate in a reverse confusion case. *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 121 (9th Cir. 1968); *Spin Master, Ltd. v. Zobmondo Entm't, LLC*, 944 F. Supp. 2d 830, 840 (C.D. Cal. 2012); *Lindy Pen*, 982 F.2d at 1405.

30.     Edge Games is not entitled to HMH's profits related to the use of *ScienceFusion* because there is no evidence that HMH willfully infringed Edge Games' mark.  *Adray*, 76 F.3d at 988.

31.     Edge Games cannot recover under Section 17200 because HMH has not earned any profits and nonrestitutionary disgorgement of profits is not available under Section 17200.  *Korea Supply Co v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1152 (2003); *BizCloud, Inc. v. Computer Scis. Corp.*, No. C-14-00162 JCS, 2014 WL 1724762 at *4 (N.D. Cal. Apr. 29, 2014).

**C.     Edge Games' False Advertising Claim.**

32.     To prove a claim for false advertising, a plaintiff must establish: "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Southland Sod Farms v. Stover Seed Co*., 108 F.3d 1134, 1139 (9th Cir. 1997).

33.     There is no evidence that HMH has made a false statement of fact as to the nature, characteristics, qualities, or geographic origin of its *ScienceFusion* textbook or of Edge's game.

STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW

34.     There is no evidence that any false statement by HMH actually deceived or has the tendency to deceive a substantial segment of its audience.

35.     Edge Games has not adduced evidence that it has been or is likely to be injured as a proximate result of any false statement of fact by HMH. *Harper House, Inc. v. Thomas Nelson, Inc.,* 889 F.2d 197, 210 (9th Cir. 1989); *Lexmark Int'l Inc. v. Static Control Components, Inc.,* 134 S. Ct. 1377, 1391, 1395 (2014).

DATED:_____

_____
Honorable Virginia A. Phillips
U.S. DISTRICT COURT JUDGE

Respectfully Submitted By:

DAVIS WRIGHT TREMAINE LLP
STUART R. DUNWOODY (*pro hac vice*)
CARLA A. MCCAULEY
DIANA PALACIOS

By:  /s Carla A. McCauley
Carla A. McCauley
Attorneys for Defendant and Counter-Claimant
HOUGHTON MIFFLIN HARCOURT
PUBLISHING COMPANY

23