Richard M. Wirtz (137812)
rwirtz@wirtzlaw.com
WIRTZ LAW APC
4365 Executive Drive, Suite 1460
San Diego, California 92121
858.259.5009

Attorneys for Plaintiff EDGE GAMES, LLC

WIRTZ LAW APC
TRIAL ATTORNEYS
Business | Real Estate | Employment | Intellectual Property
4365 Executive Drive, Suite 1460
San Diego, CA 92121
858.259.5009
1801 Century Park East, 23rd Floor
Los Angeles, CA 90067
310.226.5151

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

EDGE GAMES, LLC a California Limited Liability Company,

Plaintiff,

v.

HOUGHTON MIFFLIN HARCOURT PUBLISHING COMPANY, a Massachusetts Corporation; and DOES 1-10

Defendants.

HOUGHTON MIFFLIN HARCOURT PUBLISHING COMPANY, a Massachusetts Corporation,

Counter-claimant,

v.

EDGE GAMES, LLC a California Limited Liability Company,

Counter-Defendant.

Case Number: CV13-02123 VAP (DTBx)

**PLAINTIFF EDGE GAMES, LLC'S [PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT RE FIRST CLAIM FOR RELIEF**

Date: May 4, 2015
Time: 2:00 p.m.
Court: 2

Plaintiff Edge Games, LLC respectfully submits the following proposed Statement of Uncontroverted Facts and Conclusions of Law

**UNCONTROVERTED FACTS**

1. Plaintiff is the owner of the federally registered SCIENCE-FUSION trademark (Registration No. 3370535) in International Class 028 for educational games in the nature of board games, card games, electronic learning toys, and puzzles. Declaration of Tim Pelzel ¶3.

2. The mark was registered on January 15, 2008, and is now incontestible. Declaration of Tim Pelzel ¶4.

3. Plaintiff produces a collectible card game under the mark Science-Fusion based on the scientific periodic table of elements and intended to help children learn real information while having fun.

4. In the game, players ("Scienauts") battle one another using element characters such as Hydrogena (Hydrogen) and Ironbot (Iron). Declaration of Tim Pelzel ¶5.

5. Each element character has abilities and statistics that correspond to the element. Declaration of Tim Pelzel ¶5.

6. For example, the "attack number" is also the atomic number, the "I.P." (injury points) are the element's ionization potential, and the "electro shield" is the valence electrons. Declaration of Tim Pelzel ¶5.

7. Element characters compete in matches and victorious cards can combine into compounds, alloys, and factions. Declaration of Tim Pelzel ¶5.

8. Plaintiff first began using the SCIENCE-FUSION mark in commerce when it began to sell and promote its game in early 2006 and has continuously used the mark in commerce ever since. Declaration of Tim Pelzel ¶6.

9. SCIENCE FUSION is sold in boxed sets and additional "faction packs" (which include additional element "factions" or series from the periodic table) and

WIRTZ LAW APC TRIAL ATTORNEYS Business | Real Estate | Employment | Intellectual Property
4365 Executive Drive, Suite 1460 San Diego, CA 92121 858.259.5009
1801 Century Park East, 23rd Floor Los Angeles, CA 90067 310.226.5151

"mole cards" (which allow players to form compounds and alloys) are available both in stores and online at www.science-fusion.com.

10. Plaintiff also sells a periodic table poster of its element characters bearing the SCIENCE FUSION mark. Declaration of Tim Pelzel ¶6.

11. In addition, free lesson plans which combined with out educational games give the student a textbook like experience and sample games that can be played electronically are available on the Science Fusion website. SCIENCE FUSION was voted the best new table top game at KublaCon, the largest west coast game convention in 2007. Declaration of Tim Pelzel ¶6.

12. Plaintiff has begun expansion of its use of the mark into other industries, including literature. Declaration of Tim Pelzel ¶7.

13. In August 2008, "The Sweetness of Suffering--An Episode of Science-Fusion" (written by Plaintiff's Tim Pelzel) was first published in Of Dice & Pen, a collection of short stories by gaming's hottest creators. Declaration of Tim Pelzel ¶7.

14. Plaintiff sells its products at local venues, farmer's markets, online at its web page and on Amazon.com to parents, school teachers, home schooling parents, other educators, and distributors. Declaration of Tim Pelzel ¶8; Andrew Leach 131:8-13; 167:22-168:3; 241:4-242:25.

15. Defendant HMH is selling and offering for sale an identically named "ScienceFusion" product. HMH's product is marketed on Defendant's website as an educational science program incorporating both a print curriculum, digital lessons, and virtual labs. HMH offers its product for sale through its online website www.hmhco.com and www.amazon.com. Its product is sold by the "set," with one set required for each child. The price of each set varies between $100 and $200. HMH also sells teachers's editions and "Delux Box" products. Various pieces of the individual kits appears to be sold separately as well, including "Picture Sorting Cards." Peggy Smith-Herbst 23:11-42:1.

WIRTZ LAW APC
TRIAL ATTORNEYS
Business | Real Estate | Employment | Intellectual Property
4365 Executive Drive, Suite 1460
San Diego, CA 92121
858.259.5009
1801 Century Park East, 23rd Floor
Los Angeles, CA 90067
310.226.5151

WIRTZ LAW APC
TRIAL ATTORNEYS
Business | Real Estate | Employment | Intellectual Property
4365 Executive Drive, Suite 1460 San Diego, CA 92121 858.259.5009
1801 Century Park East, 23rd Floor Los Angeles, CA 90067 310.226.5151

16. Edge Games did not consent and has not consented to HMH's unfettered, unlicensed, royalty-free use of its federally registered word mark "SCIENCE-FUSION." Declaration of Tim Pelzel ¶9.

17. There is no dispute that HMH is using ScienceFusion for K-8 science curriculum program. HMH's product is available nationally. Peggy Smith-Herbst 23:11-42:1.

18. Both parties' products are designed to educate students about science. Declaration of Tim Pelzel ¶10; Peggy Smith-Herbst 23:11-42:1.

19. Both parties' products have an interactive component. Edge Games' product is interactive amongst the students playing the game. Declaration of Tim Pelzel ¶10. Peggy Smith-Herbst 23:11-42:1. HMH's product is interactive online with computer learning modules available for the students. Peggy Smith-Herbst 23:11-42:1.

20. Both parties' products have an element of competition. Students playing the Edge Games' product compete to score high. Declaration of Tim Pelzel ¶10.

21. Students playing the interactive online modules of HMH also compete with the computer to score high. Peggy Smith-Herbst 23:11-42:1.

22. Significant actual confusion has occurred. Ray Pelzel 53:9-19; 72:6-73:13.

23. After setting up the Amazon listing for the sale of Edge Games' products, Amazon marketing algorithm caused at least two emails to be sent to Ray Pelzel about HMH's products that were available for sale on Amazon. Ray Pelzel 53:9-19; 72:6-73:13.

24. The inference here is that any time any customer who purchases or even looks at a product of Edge Games or a product of HMH on line at Amazon.com looks will be solicited by Amazon to look at and purchase a product of the other competitor.

25. Additionally, when Mr. Andrew Leach attempted to sell Edge Games' product at local venues and farmer's markets, flea markets, trade shows, garage sales, presentations at schools, and on a few occasions consumers made inquiries if his

product was related to HMH's products. Andrew Leach 131:8-13; 167:22-168:3; 241:4-242:25.

26. Parents often search the secondary market for text books. It is in that search where the marketing channels collide. An abundance of used HMH ScienceFusion books are found online at amazon.com. Additionally, both companies sell directly to parents, teachers, school administrators, home schooling parents, and other educators and through distributors; both companies have products which are available for sale online, on their own websites and on Amazon.

27. In this case, the price of Edge Games' product is not great, nor is the cost of HMH's product. Declaration of Tim Pelzel ¶11. Thus, the amount of care is minimal when purchasing either product at issue here and the likelihood of confusion is probable.

28. HMH adopted Plaintiff's mark incredulously without conducting any of its normal due diligence. David Eber 19:21-33:6; Peggy Smith-Herbst 53:2-70:19.

29. HMH claims it did not perform a knock out search to see if the mark was being used by any other party.

30. HMH's normal practice was to perform a knockout David Eber 19:21-33:6.

31. After adopting the mark, HMH also incredulously did not seek to trademark its mark. David Eber 19:21-33:6; Peggy Smith-Herbst 53:2-70:19.

32. HMH's normal practice was to trademark its primary brands. David Eber 19:21-33:6; Peggy Smith-Herbst 53:2-70:19.

33. HMH has not purchased Edge Games' mark, has not changed to another mark, and has not entered into an assignment with Edge Games. They use Plaintiff's mark brazenly without a license, without permission and royalty free.

34. In this case, internet searches for Edge Games' mark results in several pages of hits for HMH, but not for Edge Games' mark. Edge Games product has been swamped. Declaration of Tim Pelzel ¶12

WIRTZ LAW APC
TRIAL ATTORNEYS
Business | Real Estate | Employment | Intellectual Property
4365 Executive Drive, Suite 1460 San Diego, CA 92121 858.259.5009
1801 Century Park East, 23rd Floor Los Angeles, CA 90067 310.226.5151

WIRTZ LAW APC
TRIAL ATTORNEYS
Business | Real Estate | Employment | Intellectual Property
4365 Executive Drive, Suite 1460
San Diego, CA 92121
858.259.5009
1801 Century Park East, 23rd Floor
Los Angeles, CA 90067
310.226.5151

**CONCLUSION OF LAW**

1. Upon a showing that there is no genuine dispute of material fact as to particular claim(s) or defense(s), the court may grant summary judgment in the party's favor on "each claim or defense—or *the part of each claim* or defense—on which summary judgment is sought." [FRCP 56(a)]

2. A plaintiff may move for summary judgment on the ground that there is no genuine dispute of material fact as to its own claim (or part thereof). In such a case, the plaintiff bears the initial burden of proof (production) as to each material fact upon which it has the burden of persuasion at trial: "Where the moving party has the burden this showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party. *Calderone v. United States* (6th Cir. 1986) 799 F2d 254, 259; *Southern Calif. Gas Co. v. City of Santa Ana* (9th Cir. 2003) 336 F3d 885, 888.

3. While "the burden of proving likelihood of confusion rests with the plaintiff," *(KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.* (2004) 543 U.S. 111, 122) there is no need to disprove opponent's case on a motion for summary judgment.

4. If the evidence offered in support of the motion establishes every essential element of the moving party's claim, there is no need to offer evidence to negate or disprove matters on which the opposing party has the burden of proof at trial. *Celotex Corp. v. Catrett* (1986) 477 US 317, 323; *Crawford v. Countrywide Home Loans, Inc.* (7th Cir. 2011) 647 F3d 642, 648.

5. Plaintiff need not provide any evidence to controvert affirmative defenses; it may simply point out the absence of evidence from the defendant. *Fontenot v. Upjohn Co.* (5th Cir. 1986) 780 F2d 1190, 1195; *Zands v. Nelson* (SD CA 1992) 797 F.Supp. 805, 808; *Grimmway Enterprises, Inc. v. PIC Fresh Global, Inc.* (ED CA 2008) 548 F.Supp.2d 840, 845.

WIRTZ LAW APC TRIAL ATTORNEYS Business | Real Estate | Employment | Intellectual Property 4365 Executive Drive, Suite 1460 San Diego, CA 92121 858.259.5009 1801 Century Park East, 23rd Floor Los Angeles, CA 90067 310.226.5151

6. The Lanham Act defines trademark infringement as follows:

> Any person who shall, without the consent of the registrant
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.
>
> shall be liable in a civil action by the registrant for the remedies herein provided. 15 USC §1114.

7. As used in paragraph (1) the term "any person" includes corporations. 15 USC § 1114.

8. Infringement of federally registered marks is governed by the test of whether the defendant's use is "likely to cause confusion, or to cause mistake, or to deceive." 15 USC §1114(1). The Ninth Circuit uses the *Sleekcraft* factors to determine whether likelihood of confusion exists and thus infringement. *Sleekcraft* established the following factors: (i) strength of the mark; (ii) proximity of the goods; (iii) similarity of the marks; (iv) evidence of actual confusion; (v) marketing channels used; (vi) type of goods and the degree of care likely to be exercised by the purchaser; (vii) defendant's intent in selecting the mark; and (viii) likelihood of expansion of the product lines. *AMF Inc. v. Sleekcraft Boats* (9th Cir. 1979) 599 F.2d 341, 350.

9. A strong mark is inherently distinctive, for example, an arbitrary or fanciful mark; it will be afforded the widest ambit of protection from infringing uses. *Ibid* at 349.

10. A descriptive mark tells something about the product; it will be protected only when secondary meaning is shown. *Ibid*.

11. In between lie suggestive marks which subtly connote something about the products. Although less distinctive than an arbitrary or fanciful mark and therefore a mark that is not as strong, a suggestive mark will still be protected and can be protected without proof of secondary meaning. *Ibid*.

12. The proximity of goods factor is also known as the "related" factor. For

related goods, the danger presented is that the public will mistakenly assume there is an association between the producer of the related goods, though no such association exists. *Ibid* at 350.

13. To be related in the parlance of trademark law, the conflicting good or services do not have to be in competition with each others. That the goods or services are noncompetitive does not answer the question of whether the goods are so "related" that a reasonable buyer is likely to think that defendant's goods or services are somehow connected with, or sponsored by, the plaintiff, due to similar marks. There is no simple, one-question test for determining whether noncompetitive products are "related" such that confusion is likely as to source, affiliation, connection or sponsorship. 4 McCarthy §24:24.

14. Goods are "related," not because of any inherent common quality of the respective goods, but "related" in the sense that buyers are likely to believe that such goods, similarly marked, come from the same source, or are somehow connected with or sponsored by a common company. As the Federal Circuit observed, "related" means related in the minds of potential buyers: "[G]oods that are neither used together nor related to one another in kind may still 'be related in the mind of the consuming public as to the origin of the goods. It is this sense of relatedness that matters in the likelihood of confusion analysis.'" *Shen Mfg. Co., Inc. v. Ritz Hotel, Ltd.* (Fed. Cir. 2004) 393 F.3d 1238, 1244.

15. "Related" does not mean that there is necessarily any physical relationship between the goods or services identified by the conflicting marks; it means that the marks as used are "related" in the mind of the consuming public. The Ninth Circuit stated: "The [defendant's] use need not be the same as, nor one in competition with the original use. The question is, are the uses so related that they are likely to be connected in the mind of a prospective purchaser?" *Fleischmann Distilling Corp. v. Maier Brewing Co.* (9th Cir. 1963) 314 F.2d 149, 159; Accord: *AMF Inc. v. Sleekcraft Boats*,

WIRTZ LAW APC TRIAL ATTORNEYS
Business | Real Estate | Employment | Intellectual Property
4365 Executive Drive, Suite 1460 San Diego, CA 92121 858.259.5009
1801 Century Park East, 23rd Floor Los Angeles, CA 90067 310.226.5151

WIRTZ LAW APC
TRIAL ATTORNEYS
Business | Real Estate | Employment | Intellectual Property
4365 Executive Drive, Suite 1460 San Diego, CA 92121 858.259.5009
1801 Century Park East, 23rd Floor Los Angeles, CA 90067 310.226.5151

*supra at* 348, n.10.

16. The addition of a hyphen or space does not change the identicalness of the marks. See, e.g., *In re Noon Hour Food Products Inc.*, (T.T.A.B. 2008) 88 U.S.P.Q. 2d 1172, n.2, 2008 WL 1897550 ("Certainly an upper-case letter or the addition of a hyphen (or a space) cannot obviate the statutory bar to registration of a generic designation any more than can a slight misspelling of such a term."); See also, e.g., *Nupla Corp. v. IXL Mfg. Co.* (Fed. Cir. 1997) 114 F.3d 191, 196.; See also, e.g., *Beech-Nut Packing Co. v. P. Lorillard Co.*(D.N.J. 1924) 299 F. 834, aff'd, 7 F.2d 967 (C.C.A. 3d Cir. 1925), aff'd, 273 U.S. 629, 47 S. Ct. 481, 71 L. Ed. 810 (1927) (change from BEECHNUT to BEECH-NUT); See also, e.g., *The Norwich Pharmacal Company v. Chas. Pfizer & Co., Inc.* (T.T.A.B. 1970) 165 U.S.P.Q. 644, 1970 WL 9930(change from UNBURN to UN-BURN is not abandonment. "[M]inor variations in the form in which the mark is presented do not constitute an abandonment …").

17. The "meaning" that is alleged to be similar is that which is known to the ordinary viewer or customer. A mark's meaning or derivation which is known to only a few literary experts is not relevant. *Starbucks U.S. Brands, LLC and Starbucks Corporation D.B.A. Starbucks Coffee Company v. Marshall S. Ruben* (T.T.A.B. 2006) 78 U.S.P.Q.2d 1741, 2006 WL 402564. Evidence of meaning can include standard dictionary definitions. *Tornado Industries, Inc. v. Typhoon Industries, Inc.* (1959) 20 Misc. 2d 43, 187 N.Y.S.2d 83, 121 U.S.P.Q. 328; *Hancock v. American Steel & Wire Co.* (C.C.P.A. 1953) 203 F.2d 737, 97 U.S.P.Q. 330; *Colgate-Palmolive Co. v. Carter-Wallace, Inc.* (C.C.P.A. 1970) 432 F.2d 1400, 167 U.S.P.Q. 529.

18. Very little proof of actual confusion is necessary to establish a likelihood of confusion; The corollary is that "an almost over whelming amount of proof would be necessary to refute such proof." *World Carpets, Inc. v. Dick Littrell's New World Carpets* (5th Cir. 1971) 438 F.2d 482.

19. Any evidence of actual confusion is strong proof of the fact of a likelihood

of confusion. See *Restatement Third*, Unfair Competition § 23, comment b (1995) ("[T]he existence of actual confusion is direct evidence that in the market context of their actual use the similarities of the two designations are sufficient to create confusion.)

20. "There can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion." *World Carpets, Inc. v. Dick Littrell's New World Carpets, supra*; *Thane Intern., Inc. v. Trek Bicycle Corp.*, (9th Cir. 2002) 305 F.3d 894, 902 ("Evidence of actual confusion constitutes persuasive proof that future confusion is likely").

21. Relevant to the issue of likelihood of confusion is consideration of how and to whom the respective goods of the parties are sold. Where the penultimate consumer is the parent of a product used by children, the TTAB has found a likelihood of confusion. *Piccolo Sportswear, Inc. v. Mast Industries, Inc.* (T.T.A.B. 1985), 227 U.S.P.Q. 710.

22. In assessing the likelihood of confusion to the public, the standard used by the courts is the typical buyer exercising ordinary caution. See *HMH Publishing Co. v. Lambert* (CA 9 1973) 482 F.2d 595, 599 n. 6; *New West Corp. v. NYM Co. of California, Inc.* (9th Cir. 1979) 595 F.2d 1194("a reasonable consumer of average intelligence"); *AMF, Inc. v. Sleekcraft Boats,*supra at 353. ("typical buyer exercising ordinary caution"); *Dreamwerks Production Group, Inc. v. SKG Studio* (9th Cir. 1998) 142 F.3d 1127, 1129 ("The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks.").

23. Although the wholly indifferent may be excluded, McCarthy, *supra*, at §23:27, the standard includes the ignorant and the credulous. See *Drexel Enterprises, Inc. v. Hermitage House Furniture, Inc.* (DSC 1970) 309 F.Supp. 1389, 1390.

24. Obviously, the price level of the goods or services is an important factor

WIRTZ LAW APC
TRIAL ATTORNEYS
Business | Real Estate | Employment | Intellectual Property
4365 Executive Drive, Suite 1460 San Diego, CA 92121 858.259.5009
1801 Century Park East, 23rd Floor Los Angeles, CA 90067 310.226.5151

in determining the amount of care the reasonably prudent buyer will use. If the goods or services are relatively expensive, more care is taken and buyers are less likely to be confused as to source or affiliation. 4 McCarthy *supra* at §23:95,

25. When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived. *Fleischmann Distilling Corp. v. Maier Brewing Co.*, *supra* at 157-58.

26. In a reverse confusion situation, rather than trying to profit from the senior user's mark, the junior user saturates the market and "overwhelms the senior user." "The result is that the senior user loses the value of the trademark, its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets." *Ameritech, Inc. v. American Information Technologies Corp.*(6th Cir. 1987) 811 F.2d 960; *Wood Co. v. Quaker Oats Co.* (7th Cir. 1992) 978 F.2d 947, cert. denied, 507 U.S. 1042 ("Reverse confusion occurs when a large junior user saturates the market with a trademark similar or identical to that of a smaller senior user.")

27. The Second Circuit has said that: "Reverse confusion is the misimpression that the junior user is the source of the senior user's goods. … [C]onsumers may consider [the senior user] the unauthorized infringer, and [the junior user's] use of the mark may in that way injure [the senior user's] reputation and impair its goodwill." *Banff, Ltd. v. Federated Dep't Stores, Inc.* (2d Cir. 1988) 841 F.2d 486; *W.W.W. Pharmaceutical Co. v. Gillette Co.* (2d Cir. 1993) 984 F.2d 567 ("Reverse confusion has been thought to injure the reputation of the prior user of the mark by causing potential customers to consider it a trademark infringer.")

28. The archetypical case of reverse confusion occurs when the junior user is a larger company which, prior to its nationwide launch, discovers a small (usually regional) senior user with a very similar mark in a related field. See, e.g., *In re Shell Oil Co.* (Fed. Cir. 1993) 992 F.2d 1204, 26 U.S.P.Q.2d 1687(Affirming refusal to register

WIRTZ LAW APC
TRIAL ATTORNEYS
Business | Real Estate | Employment | Intellectual Property
4365 Executive Drive, Suite 1460
San Diego, CA 92121
858.259.5009
1801 Century Park East, 23rd Floor
Los Angeles, CA 90067
310.226.5151

RIGHT-A-WAY to Shell for oil change services by Shell's twelve thousand service stations over the prior registration of RIGHT-A-WAY to a small company using the mark RIGHT-A-WAY for wholesale distribution of auto parts. "A newcomer does not gain the right to register a substantially identical mark simply because the number of persons exposed to the registrant's mark may be small in relation to the newcomer's volume of use."); *Dreamwerks Production Group, Inc. v. SKG Studio* (Fed. Cir. 1993) 142 F.3d 1127(Reversing a dismissal on summary judgment of the reverse confusion claim of plaintiff DREAMWERKS, a small company which organized science fiction conventions (such as STAR TREK gatherings), against Hollywood moguls Speilberg, Katzenberg and Geffen's DREAMWORKS motion picture production company.);

29. Simply put, when a large national company finds a conflicting mark of a small local user on a trademark search, it cannot simply go ahead and roll over the smaller senior user. To avoid the risk of losing a case of reverse confusion, the larger junior user must either buy the senior's user's mark or change to another mark or enter into an assignment with the senior user with a license-back. 4 McCarthy, *supra* §23:10.

30. Since in a reverse confusion case, the junior user is not trying to take a free ride on the recognition value of a strong, senior mark, there is no reason to apply the standard requirement that the senior user have a mark strong enough that confusion will result. *Fisons Horticulture v. Vigoro Indus., Inc.* (3d Cir. 1994) 30 F.3d 466 ("In reverse confusion, the mark of the senior user is typically weaker commercially than that of the junior user"); *Sunenblick v. Harrell* (S.D.N.Y. 1995) 895 F. Supp. 616, aff'd without op., 101 F.3d 684 (2d Cir. 1996), cert. denied, 117 S. Ct. 386 (1996) (agreeing with Fisons and Sands, Taylor that focus should be on the strength of the junior user's mark.

31. Inasmuch as a trademark owner is afforded greater protection against competing goods, a "strong possibility" that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing.

WIRTZ LAW APC
TRIAL ATTORNEYS
Business | Real Estate | Employment | Intellectual Property
4365 Executive Drive, Suite 1460 San Diego, CA 92121 858.259.5009
1801 Century Park East, 23rd Floor Los Angeles, CA 90067 310.226.5151

*Restatement of Torts* §731(b) & Comment c.

32. When goods are closely related, any expansion is likely to result in direct competition. Compare *Communications Satellite Corp. v. Comcet, Inc*. (4th Cir. 1970) 429 F.2d 1245, 1253.

33. Among the many ways to prove likelihood of confusion are two that are applicable in this case. Plaintiff has proven likelihood of confusion with proof of actual confusion (discussed above) and on the clear inference arising from a comparison of the conflicting marks and the context of their use. 4 McCarthy, *supra* §23:2.50

34. It is not necessary for any witness to testify as to instances of actual confusion, for evidence of actual confusion is not necessary to prove a likelihood or probability of confusion. 4 McCarthy, *supra* §23:63.

35. "[A] judge is free to draw upon his own experience and observation to make an informed judgment as to the likelihood of confusion apt to be spawned by strongly analogous symbols." *Volkswagenwerk AG v. Hoffman* (D.S.C. 1980) 489 F. Supp. 678, 682. See also *Shen Mfg. Co. v. Suncrest Mills, Inc.*, (SDNY 1987) 673 F. Supp. 1199 (after making a "visual inspection" of the "almost identical" trade dress and marks, the court concluded that "the strong resemblance of the combined features of the two products establishes a high likelihood of confusion between them").

36. Many courts have stated that when the issue of likelihood of confusion is in doubt, the question will be resolved in favor of the senior user. *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.* (9th Cir. 1997) 109 F.3d 1394, 1401 n.14 ("In a close case amounting to a tie, doubts are resolved in favor of the senior user.")

Respectfully Submitted,

DATED: April 7, 2015

**WIRTZ LAW APC**

By: Richard M. Wirtz
Attorney for Plaintiff

WIRTZ LAW APC
TRIAL ATTORNEYS
Business | Real Estate | Employment | Intellectual Property
4365 Executive Drive, Suite 1460
San Diego, CA 92121
858.259.5009
1801 Century Park East, 23rd Floor
Los Angeles, CA 90067
310.226.5151