Davis Wright Tremaine LLP
865 S. Figueroa St., Suite 2400
Los Angeles, California 90017-2566
Telephone (213) 633-6800
Fax (213) 633-6899
CARLA A. MCCAULEY (State Bar No. 223910)
  carlamccauley@dwt.com
DIANA PALACIOS (State Bar No. 290923)
  dianapalacios@dwt.com

Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
Telephone (206) 622-3150
Fax: (206) 757-7700
STUART R. DUNWOODY (*pro hac vice*)
  stuartdunwoody@dwt.com

Attorneys for Defendant and Counter-Claimant
HOUGHTON MIFFLIN HARCOURT
PUBLISHING COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDGE GAMES, LLC a California Limited Liability Company,<br><br>                    Plaintiff,<br><br>        vs.<br><br>HOUGHTON MIFFLIN HARCOURT PUBLISHING COMPANY, a Massachusetts Corporation; and DOES 1-10,<br><br>                    Defendants.<br> | Case No. EDCV13-02123 VAP (DTBx)<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE FIRST CLAIM FOR FEDERAL TRADEMARK INFRINGEMENT**<br><br>[Statement of Genuine Disputes; Declarations of Herbst-Smith and McCauley and Exhibits 1 to 6; and Evidentiary Objections concurrently filed]<br><br>Date: May 4, 2015<br>Time: 2:00 p.m.<br>Court: 2 |
| HOUGHTON MIFFLIN HARCOURT PUBLISHING COMPANY, a Massachusetts Corporation,<br><br>                    Counter-Claimant,<br><br>        vs.<br><br>EDGE GAMES, LLC a California Limited Liability Company,<br><br>                    Counter-Defendant. | |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................. 1

II. FACTUAL AND PROCEDURAL BACKGROUND ................................... 2

III. ARGUMENT ..................................................................... 3

    A. Edge Games' Untimely and Unsupported Motion Fails to Meet Plaintiff's Burden For Summary Judgment On Its First Claim. .......... 3

    B. Edge Games Produces No Evidence of a Registered Mark. ............... 7

    C. Edge Games Has Not Established A Likelihood of Confusion. .......... 8

        1. Strength of Mark. ................................................... 8

        2. The Goods Are Not Related. ...................................... 10

        3. There Is No Similarity ............................................ 13

        4. There Is No Evidence of Any Actual Confusion ................... 15

        5. The Marketing Channels Do Not Overlap. ........................ 18

        6. Type of Goods and Purchaser Care. ............................... 20

        7. There Is No Evidence of Intent. ................................... 21

        8. There Is No Likelihood of Expansion. ............................ 24

IV. NO LIKELIHOOD OF CONFUSION EXISTS. ................................. 25

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

Page

**Cases**

*Accuride Int'l, Inc. v. Accuride Corp.,*
   871 F.2d 1531 (9th Cir. 1989) .......................................................... 19

*AMF Inc. v. Sleekcraft Boats,*
   599 F.2d 341 (9th Cir. 1979) ..................................................... *passim*

*Beech-Nut Packing Co. v. P. Lorillard Co.,*
   299 F. 834 (D.N.J. 1924) ................................................................ 13

*Blumberg v. Gates,*
   No. CV 00-05607 GAF, 2003 WL 22002739 (C.D. Cal. Aug. 19,
   2003) .............................................................................................. 5

*Brookfield Commc'ns, Inc. v. W. Coast Entmt' Corp.,*
   174 F.3d 1036 (9th Cir. 1999) ....................................................... 8, 9

*Calderone v. United States,*
   799 F.2d 254 (6th Cir. 1986) ............................................................ 4

*Christian Legal Soc. v. Wu,*
   626 F. 3d 483 (9th Cir. 2010) ........................................................... 4

*Cohn v. Petsmart, Inc.,*
   281 F.3d 837 (9th Cir. 2002) .......................................................... 18

*Colgate-Palmolive Co v. Carter-Wallace, Inc.,*
   432 F.2d 1400 (C.C.P.A. 1970) ...................................................... 15

*Echo Drain v. Newsted,*
   307 F. Supp. 2d 1116 (C.D. Cal. 2003) ...................................... *passim*

*Eidem v. Target Corp.,*
   No. EDCV 10-01000 VAP, 2011 WL 3756144 (C.D. Cal. Aug. 24,
   2011) ............................................................................................ 22

*Fleischer Studios, Inc. v. A.V.E.L.A., Inc.,*
   654 F.3d 958 (9th Cir. 2011) ............................................................ 7

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
DWT 26602144v4 0096293-000007

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Hancock v. American Steel & Wire Co*,
   203 F.2d 737 (C.C.P.A. 1953) .......................................................................... 15

*Herbko Int'l, Inc. v. Kappa Books, Inc.*,
   308 F.3d 1156 (Fed. Cir. 2002) ...................................................................... 24

*In re Noon Hour Food Products Inc.*,
   88 U.S.P.Q. 2d 1172 (T.T.A.B. 2008) ............................................................. 13

*Int'l Order of Job's Daughters v. Lindeburg & Co.*,
   633 F.2d 912 (9th Cir. 1980) .......................................................................... 22

*James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.*,
   No. SACV 11-1309 DOC, 2013 WL 655314 (C.D. Cal. Feb. 21,
   2013) .............................................................................................................. 18

*Japan Telecom, Inc. v. Japan Telecom Am. Inc.*,
   287 F.3d 866 (9th Cir. 2002) .......................................................................... 15

*Learning Internet v. Learn.com*,
   2009 WL 6059550 (D. Or. Nov. 25, 2009)................................................ 20, 21

*M2 Software, Inc. v. Viacom Inc.*,
   421 F.3d 1073 (9th Cir. 2005) ............................................................ 14, 20, 25

*Machine Head v. Dewey Global Holdings, Inc.*,
   No. 99-04326 CW, 2001 U.S. Dist. LEXIS 22759 (N.D. Cal. Dec.
   18, 2001) ......................................................................................................... 23

*Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*,
   290 F. Supp. 2d 1083 (C.D. Cal. 2003) ................................................... *passim*

*Medina v. Multaler, Inc.*,
   547 F. Supp. 2d 1099 (C.D. Cal. 2007) ............................................................ 9

*Multi Time Mach., Inc. v. Amazon.com*,
   926 F. Supp. 2d 1130 (C.D. Cal. 2013) .......................................................... 16

*Network Automation, Inc. v. Advanced Systems Concepts, Inc.*,
   638 F.3d 1137 (9th Cir. 2011) ............................................................. 10, 16, 20

*The Norwich Pharmacal Company v. Chas. Pfizer & Co., Inc.*,
   165 U.S.P.Q. 644 (T.T.A.B 1970) .................................................................. 13

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Nutri/System, Inc. v. Con-Stan Indus., Inc.*,
   809 F.2d 601 (9th Cir. 1987) ..................................................................... 8

*Orr v. Bank of America*,
   285 F.3d 764 (9th Cir. 2002) .......................................................... 4, 5, 6

*Piccolo Sportswear, Inc. v. Mast Industries, Inc.*,
   227 U.S.P.Q. 710 (1985).......................................................................... 19

*Pom Wonderful LLC v. Hubbard*,
   775 F.3d 1118 (9th Cir. 2014) ................................................................. 7

*Quia Corp. v. Mattel, Inc.*,
   No. C 10-1902 JF (HRL), 2010 WL 2486364 (N.D. Cal. June 25,
   2010) ....................................................................................................... 12

*Quia Corp. v. Mattel, Inc.*,
   No. C 10-1902 JF HRL, 2011 WL 2749576 (N.D. Cal. July 14,
   2011) ....................................................................................................... 23

*Rearden LLC v. Rearden Commerce, Inc.*,
   683 F.3d 1190 (9th Cir. 2012) ............................................................... 15

*SecuraComm Consulting Inc. v. Securacom Inc.*,
   166 F.3d 182 (3d Cir. 1999)................................................................... 22

*Shen Mfg. Co v. Ritz Hotel, Ltd.*,
   393 F.3d 1238 (Fed. Cir. 2004).............................................................. 10

*Spin Master, Ltd. v. Zobmondo Entertainment, LLC*,
   944 F. Supp. 2d 830 (C.D. Cal. 2012) ................................................... 24

*Stark v. Diageo Chateau & Estate Wines Co.*,
   907 F. Supp. 2d 1042 (N.D. Cal. 2012) ............................................. 7, 23

*Stonefire Grill, Inc. v. FGF Brands, Inc.*,
   987 F. Supp. 2d 1023 (C.D. Cal. 2013) .............................. 11, 24, 25

*Surfvivor Media, Inc. v. Survivor Productions*,
   406 F.3d 625 (9th Cir. 2005) .............................................................. 7, 24

*Yung v. Institutional Trading Co.*,
   No. 07-5949 SC, 2008 WL 1734743 (N.D. Cal. Apr. 14, 2008)......................... 5

iv

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Zamacona v. Ayvar*,
   No. CV 07-2767 ABC, 2009 WL 279073 (C.D. Cal. Feb. 3, 2009) .................. 7

*Zands v. Nelson*,
   797 F. Supp. 805 (S.D. Cal. 1992) ....................................................... 4

**Statutes**

15 U.S.C.
   § 1114 ...................................................................... 1, 3, 4, 7
   § 1114(1)(a) ...................................................................... 3
   § 1114(1)(a) ...................................................................... 7, 8

**Rules**

Federal Rule of Civil Procedure 30(b)(6) ............................................. 17

Federal Rule of Evidence 1002 ....................................................... 9

Local Rule 5-4.3.1 .................................................................. 5

Local Rule 5-4.3.4(a)(3) ............................................................ 5

Local Rule 7-12 ..................................................................... 4

**Other Authorities**

Schwarzer, Tashima, & Wagstaffe, Federal Civil Practice Before Trial
   14:140 (2007) ..................................................................... 4

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
DWT 26602144v4 0096293-000007

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# I.    INTRODUCTION

Plaintiff Edge Games LLC's ("Edge Games") untimely Motion for Partial Summary Judgment Re First Claim for Federal Trademark Infringement ("Motion") fails on every level to meet the stringent showing a plaintiff seeking affirmative summary judgment must meet before such a motion may be granted.

First, Edge Games' Motion violates every tenet set forth in this Court's Standing Order regarding timely filing and proper support for a motion for summary judgment.  Specifically, Edge Games ignored the Court's requirement that an e-filing be completed by 4 p.m. on the date due, filing its Motion at midnight, and its supporting declarations and statement of uncontroverted facts a day later. Edge Games' Motion and statement of uncontroverted facts, moreover, lack citations to any supporting evidence in many cases, while the remaining citations are either to inadmissible evidence or mass deposition citations lacking supporting pincites. Thus, the Court is left "hunting for truffles" and without any admissible evidence. On these grounds alone, Edge Games' motion may be denied.

Second, Edge Games fails to set forth the appropriate legal standards for liability under 15 U.S.C. § 1114. Edge Games frequently fails to reference binding Ninth Circuit authority. Even where binding authority is cited, Edge Games ignores critical elements identified in those authorities for determining likelihood of confusion.

Finally, Edge Games fails to come forward with admissible evidence that it owns a registered mark or that the *Sleekcraft* analysis so favors Edge Games that no trial in this matter is necessary. Quite the opposite. Edge Games' paltry showing on its own Motion proves exactly the point Defendant Houghton Mifflin Harcourt ("HMH") made in its own motion for summary judgment in this matter: namely, that a jury trial is not necessary in this action, as there is no likelihood of confusion between the parties' products.

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

DWT 26602144v4 0096293-000007

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Much of the relevant factual background pertinent to HMH's opposition to Edge Games' Motion is set forth, in detail, in HMH's Motion for Summary Judgment or, Alternatively, Summary Adjudication of Issues ("HMH Motion"), along with relevant citations to evidence submitted by HMH and detailed in its Statement of Uncontroverted Facts ("HMH SUF"). In the interest of avoiding repetition, HMH refers the Court to its factual background section in its moving papers.

As discussed in HMH's Motion, the only product Edge Games has actually sold under the name "Science-Fusion" is the card game called Science-Fusion The Elements of the Scienauts: The Game About The Periodic Table.  HMH SUF 47, 51-53; *see also* HMH Statement of Genuine Disputes of Material Facts and Additional Statement of Uncontroverted Issues ("SGD") 12. Edge Games only began to offer its game for sale on Amazon in late 2014, although it is not currently offering any products for sale on Amazon. HMH SUF 31; SGD 114.

When HMH designs instructional materials, it does so with the ultimate goal of enabling achievement and preparing children for college and careers. The content is rooted in efficacy and aligned with comprehensive national and state curriculum standards, with the goal of ensuring the teacher is equipped with strategies and components for a full instructional cycle, including introduction of concepts, explanation and exploration of content, extension and enrichment of concepts, and multiple means of assessment, thus ensuring instructional goals and objectives have been met.  SGD 109.

HMH's *ScienceFusion* program does not offer any educational games as part of its program materials. SGD 111; *see also* SGD 18. While *ScienceFusion* offers interactive digital content, such content is interactive only in the sense that it provides the ability for students to assess their knowledge by receiving feedback from the computer program. SGD 19. Students using the *ScienceFusion* textbook program do not "compete to score high." The *ScienceFusion* textbook materials offer

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

students assessment opportunities, but these not competitions, but rather a means to assure that students are learning the material. SGD 20-21.

HMH's *ScienceFusion* program is designed to provide grade-specific instructional materials from kindergarten through grade 8.  SGD 18, 110; HMH SUF 70. Thus, schools and districts that make the decision to adopt the textbook program are not making a singular purchase, but rather are making a decision to adopt a curriculum for use across the entire school system, including all schools in the district, all grades in the school, and all classrooms in any particular grade. *Id*.; *see also* HMH SUF 87. The decision to purchase a textbook program by schools and districts is not a casual one involving minimal expense, but is rather conducted with great deliberation and care by the professionals who are involved in the selection process. HMH SUF 88; Second Declaration of Peggy Smith-Herbst ¶¶ 4, 11.

By Order dated December 22, 2014, the Court set the last court date for a hearing on summary judgment in this action for May 4, 2015. Thus, the last timely date by which to file such motions was April 6, 2015, and according to the Court's Standing Order, all such documents must be e-filed not later than 4 p.m. on the date due.  Declaration of Carla A. McCauley dated April 13, 2015 ("Second McCauley Decl.") ¶ 8; Standing Order at 7. Edge Games filed its Motion at 11:57 p.m. on April 6, 2015.  It did not file any evidence in support of its Motion, other than a declaration of Richard Wirtz, without exhibits. Nor did Edge Games initially file a Statement of Uncontroverted Facts.  Second McCauley Decl. ¶ 9. At 9:13 a.m. on April 7, 2015, Edge Games filed its Statement of Uncontroverted Facts, an amended Declaration of Richard Wirtz, and the unsigned Declaration of Tim Pelzel. *Id*. ¶ 10.

### III.   ARGUMENT

**A.   Edge Games' Untimely and Unsupported Motion Fails to Meet Plaintiff's Burden For Summary Judgment On Its First Claim.**

As a plaintiff moving for summary adjudication on the issue of liability under its first cause of action for infringement of a registered mark under 15 U.S.C. §

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
DWT 26602144v4 0096293-000007

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1114(1)(a), Edge Games has the burden of providing admissible evidence for every element necessary for that liability determination. Edge Games' papers fall well short of that standard, including because it fails to provide the Court properly authenticated and admissible evidence in support of its Motion.

A plaintiff moving for summary judgment must "adduce admissible evidence on all matters as to which he or she bears the burden of proof." *Zands v. Nelson,* 797 F. Supp. 805, 808 (S.D. Cal. 1992) (citing Schwarzer, Tashima, & Wagstaffe, Federal Civil Practice Before Trial 14:140 (2007)). "The showing by a moving party that bears the burden of proof 'must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.'" *Id.* (quoting *Calderone v. United States*, 799 F.2d 254, 258-59 (6th Cir. 1986)). As the plaintiff, Edge Games has the burden of proving liability on a Lanham Act claim under 15 U.S.C. § 1114.

A dispositive motion for summary judgment must be timely filed, and to be entitled to relief, a party must point to specific evidence in support of its request for relief. According to the Local Rules, all motions and supporting papers must be timely filed on the date due, and according to the Court's Standing Order, e-filings must be completed by 4 p.m. Local Rule 7-12; Standing Order 7:7. Summary judgment motions in particular require the moving party to provide pincites to supporting evidence, or a proffered fact is deemed unsupported. Standing Order at 6:7-13 (citing *Christian Legal Soc. v. Wu*, 626 F. 3d 483, 488 (9th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in briefs.").

It goes without saying that the evidence offered must be admissible. *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). Thus, evidence, including deposition excerpts, must be properly authenticated and must otherwise comply with the Rules of Evidence. *Id.* at 774, 778 (affirming district court's findings on lack of deposition authentication and hearsay on motion for summary

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
DWT 26602144v4 0096293-000007

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

judgment). Moreover, declarations of witnesses must be signed, or they lack evidentiary significance. *See Blumberg v. Gates*, No. CV 00-05607 GAF (AJWx), 2003 WL 22002739, at *1 (C.D. Cal. Aug. 19, 2003) ("Without the declarant's signature, a declaration is completely robbed of any evidentiary force."); Local Rule 5-4.3.4(a)(3) ("In the case of documents requiring signatures other than those of registered CM/ECF Users (such as declarations), the filer shall scan the hand-signed signature page(s) of the document in PDF format and electronically file the document in accordance with L.R. 5-4.3.1."); *see also Yung v. Institutional Trading Co.*, No. 07-5949 SC, 2008 WL 1734743, at *1 (N.D. Cal. Apr. 14, 2008) (holding that the plaintiff "submitted an unsigned declaration" when the declaration was electronically signed in violation of the local rules).

Myriad problems with Edge Games' Motion exist.  First, its filing was untimely.  Not only was the Motion late-filed after the Court's 4 p.m. deadline, but Edge Games filed the supporting declarations, exhibits and Statement of Uncontroverted Facts a day late. Second McCauley Decl. ¶ 9. In fact, both the Amended Wirtz Declaration and Pelzel Declaration are dated April 7, 2015—a day late.[1]

In addition, and as set forth more fully in HMH's concurrently filed Evidentiary Objections, most of Edge Games' evidence is inadmissible. The deposition excerpts for David Eber and Peggy Smith-Herbst are not properly authenticated as they lack the court reporter's attestation,[2] and the declaration of

---

[1] At midnight on April 6, 2015, Mr. Wirtz sent counsel for HMH an email requesting that counsel identify whether any HMH deposition references in Edge Games' motion were confidential.  This email provides no excuse for the late filing on April 7, 2015, as none of the materials filed were confidential, and in any event, Edge Games filed the remaining supporting documents before HMH's counsel even had an opportunity to respond to the email from the night before.  Second McCauley Decl. ¶ 10 and Ex. 6.

[2] The depositions for Andrew Leach and Raymond Pelzel are similarly unauthenticated, however, as these depositions appear in support of HMH's Motion for Summary Judgment, HMH concedes authentication of these deposition excerpts. *Orr*, 285 F.3d at 776.

counsel for Edge Games attesting to these excerpts as being "true and correct" does not properly authenticate these excerpts. *Orr*, 285 F.3d at 774. The declaration of Tim Pelzel is unsigned, as the declaration does not bear the witness's physical signature and the attempt to use an e-signature is invalid.[3] Thus, the entirety of Pelzel's declaration is invalid, and all facts in Edge Games' Statement of Uncontroverted Facts that rely upon the declaration are unsupported. Even if this Court were to look at the assertions made in the Pelzel declaration, much of the document is replete with statements lacking foundation or hearsay. Documents referred to in the Pelzel declaration, moreover, are missing (*e.g.*, Pelzel Decl. ¶ 4), while other statements make assertions about documents, but do not provide sufficient detail about the documents to draw appropriate conclusions, much less provide the document itself as best evidence of its contents (*e.g.*, ¶ 12).  From an evidentiary standpoint, Edge Games' Motion is wholly unsupported given these failures. *See* HMH's concurrently filed Evidentiary Objections.

Putting aside the Rules of Evidence, Edge Games' Statement of Uncontroverted Facts omits source support or, alternatively, fails to adequately cite specific passages from depositions, leaving the Court to hunt around for supporting evidence. Specifically, Fact Numbers 3, 9, 24, 26, 29 and 33 lack any source support whatsoever. Fact Numbers 15, 17, 19 and 21 all rely on the same twenty page citation to Peggy Smith-Herbst's deposition. The cited pages either do not support many of the facts asserted, or given the length of the citation, make it difficult to ascertain whether an assertion of fact is supported somewhere in the record. Similarly, Facts 28, 30, 31 and 32 cite thirty pages of undifferentiated citations to the Eber and Smith-Herbst depositions, again leaving the Court to truffle hunt.

---

[3] It is also curious that the Pelzel declaration is purported to be signed under penalty of perjury in San Diego, California—notwithstanding the fact that Mr. Pelzel is a resident of Washington.  HMH SUF 5.

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
DWT 26602144v4 0096293-000007

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Given all of the evidentiary issues with Edge Games' Motion, it has not met its burden of affirmatively establishing each of the required elements for liability under the Lanham Act. On these grounds alone, Edge Games' Motion should be denied.

**B.    Edge Games Produces No Evidence of a Registered Mark.**

Before even getting to the issue of likelihood of confusion, Edge Games must establish with admissible evidence, in the first instance, that it has "a valid, protectable ownership interest in a trademark" that is the subject of the confusion analysis. *Stark v. Diageo Chateau & Estate Wines Co*., 907 F. Supp. 2d 1042, 1050 (N.D. Cal. 2012); *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 630 (9th Cir. 2005) (successful trademark infringement claim requires showing that the claimant holds a protectable mark). On a claim for violation of 15 U.S.C. § 1114(1)(a)—which is the only claim upon which Edge Games is moving for summary judgment—the ownership claim rests on the existence of a mark that is registered with the USPTO.  *Zamacona v. Ayvar*, No. CV 07-2767 ABC (FMOx), 2009 WL 279073, at *1 (C.D. Cal. Feb. 3, 2009) ("§ 1114 pertains to registered marks").

Edge Games' sole evidence in support of its ownership of a registered trademark is a statement to that effect made in the unsigned declaration of Tim Pelzel. SGD 1, 2; *see also* Evidentiary Objections at 3. Edge Games nowhere proffers to the Court a copy of its trademark registration. *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014) (plaintiff could show likelihood of success on injunction where it proffered a copy of trademark registration is evidence of ownership); *Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*, 654 F.3d 958, 965 (9th Cir. 2011) (affirming summary judgment where plaintiff failed to submit timely evidence of a federal trademark registration).

Given Edge Games' failure to produce any admissible evidence to support its ownership of a valid and protectable registered trademark, Edge Games' Motion should be denied.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**C.     Edge Games Has Not Established A Likelihood of Confusion.**

Edge Games contends its trademark infringement claim under 15 U.S.C. § 1114(1)(a) is based upon a theory of reverse confusion. As such, the multi-factor test under *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979), must be analyzed with reverse confusion in mind. And yet, Edge Games fails to identify with appropriate Ninth Circuit authority all of the considerations under each *Sleekcraft* factor, much less to show how those factors are to be applied in a reverse confusion analysis.  Finally, Edge Games' evidentiary showing for each factor is woefully deficient, and certainly does not merit affirmative summary adjudication. Rather, Edge Games' Motion emphasizes the fact that HMH's own pending Motion for Summary Judgment based on the absence of confusion must be granted, given that these factors all weigh heavily in HMH's favor.

**1.     Strength of Mark.**

HMH does not dispute that Science-Fusion as a mark is suggestive. In fact, HMH made exactly this point in its own Motion. HMH Motion at 7. However, Edge Games is wrong when it implies that suggestive marks are "strong" marks for purposes of likelihood of confusion analysis. Edge Games is likewise wrong when it suggests that simply determining a mark is suggestive ends the inquiry regarding the strength of mark component of likelihood of confusion analysis.

First, a suggestive mark on the continuum of marks from weakest to strongest is a weak mark.  *Nutri/System, Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 605 (9th Cir. 1987) (holding descriptive and suggestive marks are weakest, in contrast to arbitrary or fanciful marks). The weaker a mark's conceptual strength, the less protection it receives. *Id.* Thus, it cannot be said that a suggestive mark is a "strong" mark entitled to significant protection. Quite the opposite; suggestive marks are weak marks "entitled to a restricted range of protection." *Brookfield Commc'ns, Inc. v. W. Coast Entmt' Corp.,* 174 F.3d 1036, 1058 (9th Cir. 1999); *Sleekcraft*, 599 F.2d at 350.

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
DWT 26602144v4 0096293-000007

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Second, the assessment of a mark's strength requires not only analysis of the conceptual strength of the mark, but also its commercial strength, meaning the amount of commercial recognition a mark receives, as impacted by the amount spent to advertise the goods or services using the mark. *Brookfield,*174 F.3d at 1058. In a reverse confusion case, the commercial strength inquiry focuses on the junior user's mark and its commercial strength. *Echo Drain v. Newsted*, 307 F. Supp. 2d 1116, 1123 (C.D. Cal. 2003). Edge Games utterly ignores this component of the strength analysis, not even mentioning it in its brief. For example, Edge Games does not provide any evidence of how much HMH has spent on advertising its textbook program, or whether consumers have any knowledge of HMH's textbook title at all.

Nor has Edge Games provided any evidence that the *ScienceFusion* textbook program has overpowered Edge Games' mark through "saturation in the public awareness of the junior user's mark." *Echo Drain*, 307 F. Supp. 2d at 1124-25. Edge Games asserts that Internet searches for Edge Games' mark result in several pages of hits for HMH, but not for Edge Games' mark. *See* SGD 34; Motion at 14. This statement, however, relies entirely on the unsigned declaration of Tim Pelzel. Moreover, Pelzel does not attach to his declaration any documentary evidence of the searches allegedly conducted, thus, it is impossible to know what search terms were used, through which search engine, or how the results actually appeared. Fed. R. Evid. 1002; *Medina v. Multaler, Inc.*, 547 F. Supp. 2d 1099, 1121-22 (C.D. Cal. 2007) (excluding evidence for failing to attach supporting documents). The declaration, in other words, which itself is not proper evidence of anything, is devoid of the most basic detail and supporting documentation to actually support a claim of marketplace saturation. Nor is there any correlation of such searches to how consumers perceive either product. In fact, Edge Games provides no factual or legal authority for its theory that a single Internet search with unknown search terms and undisclosed results has any bearing on the larger question of whether market saturation has, in fact, occurred vis a vis Edge Games' product and mark. In short,

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
DWT 26602144v4 0096293-000007

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Edge Games' argument about the first *Sleekcraft* factor is unsubstantiated, and weighs in favor of HMH.

### 2.    The Goods Are Not Related.

Edge Games' argument regarding the relatedness of its product with HMH's textbook program starts off on the wrong foot by failing to fully detail the Ninth Circuit's test for measuring the relatedness of products that do not directly compete, as is the case here. Then, Edge Games mischaracterizes the record in an effort to draw similarities between the products that do not, in fact, exist and otherwise makes broad statements about similarities of the products that are not relevant to the relatedness analysis in any event.

In the Ninth Circuit[4], the test for the relatedness of two similarly marked goods is "measured by whether the products are: (1) complementary; (2) sold to the same class of purchasers; and (3) similar in use and function." *Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1150 (9th Cir. 2011); *Sleekcraft*, 599 F.2d at 350. Courts frequently reject efforts to show products are related by broadly characterizing two products with similar marks. "Meaningful differences between the products and services are often cited as a factor tending to negate reverse confusion, even when the products are superficially within the same category." *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1092 (C.D. Cal. 2003) (internal citations omitted). Thus, efforts to prove two separate products are "related" by broadly characterizing them as similar have been rejected when taking into account the meaningful differences concerning how the products

---

[4] Edge Games' reliance on *Shen Mfg. Co v. Ritz Hotel, Ltd.*, 393 F.3d 1238, 1244-45 (Fed. Cir. 2004), is misplaced not only because it fails to identify the appropriate test for relatedness relevant to this court, but also fails to appreciate the fact that the Federal Circuit in that case held that cooking classes and kitchen textiles branded under identical marks were still unrelated because there was no indication the consuming public would perceive the products as related, even though they were used together.  Here, there is not even a showing that Edge Games' game and HMH's textbook program are used together, much less evidence of consumer perception.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

are sold, the use and function of the products, and the product's class of purchasers. *See id.* (rejecting relatedness of Toyota cars and Matrix race cars given differences in products); *Echo Drain,* 307 F. Supp. 2d at 1125 (holding pop rock and metal bands not related given differences in music genre); *Stonefire Grill, Inc. v. FGF Brands, Inc.,* 987 F. Supp. 2d 1023, 1050-51 (C.D. Cal. 2013) (rejecting argument that restaurant and retail food product are related).

Edge Games' effort to characterize its game and HMH's textbook program as "related" because they are "designed to educate students about science", are "interactive", or involve competition is unsupported by any facts and is also guilty of the type of broad characterization of the products judged by courts in this Circuit as not indicative of the proximity of the goods.

First, there is simply no admissible evidence that Edge Games' game is designed to educate students at all, much less about science generally. SGD 18. Pelzel's self-serving statement to that effect is not evidence of the design of the product or its ability to serve as an educational tool remotely akin to a textbook program.[5] The Science-Fusion The Elements of the Scienauts game uses limited information from the periodic table of elements for purposes of its game play. That does not mean that the concepts are explained in any detail such that students can properly learn anything, or that the game provides teachers with a teaching methodology or means to assess their student's understanding of a topic. Nor is it accurate to equate a game with a textbook program consisting of a comprehensive curriculum. SGD 11, 109-113. Edge Games' game is a one-time consumer good purchase, while HMH's textbook program represents an investment by a school or district in a nine year curriculum aimed at teaching students at grade level numerous scientific topics, while providing teachers with the resources they need to help their

---

[5] In early marketing efforts, Edge Games' creators denied that their game was educational.  HMH SUF 20.

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
DWT 26602144v4 0096293-000007

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

students learn the topics and giving assessment tools to ensure the students are learning the material. HMH SUF 70; SGD 18, 110. A person may play the game Trivial Pursuit, and manage to memorize some facts, or may play a game using dice, and learn rudimentary counting skills, but that does not mean that either game is similar to a comprehensive teaching curriculum for history or mathematics. The same is true for Edge Games' effort to cast its product as related to HMH's textbook program by broadly characterizing both as "educational." *Quia Corp. v. Mattel, Inc*., No. C 10-1902 JF (HRL), 2010 WL 2486364, at *6-*7 (N.D. Cal. June 25, 2010) (rejecting argument that handheld learning device for children and online standards-based math learning software were "related" because both "help children learn").

Second, Edge Games' effort to cast its game as "interactive" is unsupported, and in any event what it means by "interactive" is very different from the type of interactivity involved in HMH's textbook program. SGD 19. HMH uses interactive digital resources in its *ScienceFusion* textbook program, meaning students receive feedback from a computer program that allows them to assess whether they understand course materials. That meaning of "interactive" is very different from what Edge Games means when it argues its game play is interactive—specifically, that players, just as in any multi-player game, interact with one another in the course of gameplay. Using a word with two different meanings to describe these two different products does not mean they are related. SGD 19. Many products and services could be characterized as "interactive" under many different meanings of that word, and yet such a broad characterization does not mean the goods are proximate or likely to cause confusion.

Third, there is simply no evidence that there is any competitive component to HMH's *ScienceFusion* textbook program, much less one that makes it similar in any way to a card game. Even if those sections of the Smith-Herbst deposition were properly authenticated—which they are not—they are devoid of any suggestion that the *ScienceFusion* textbook program either has competitive features or game

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
DWT 26602144v4 0096293-000007

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

components. In fact, the *ScienceFusion* textbook program does not include any game components. Nor do students compete with one another or a computer to "score high." SGD 20-21. These assertions in Edge Games' brief and Statement of Uncontroverted Facts are entirely unsupported. Further, even if any portion of the *ScienceFusion* textbook program did include competitive features—which it does not—that would still not be sufficient to hold that its comprehensive curriculum is in any way similar in use or function to a card game. SGD 104, 112-113.

Putting aside the distinct uses and functions of Edge Games' game and HMH's *ScienceFusion* textbook program, Edge Games does not even make an attempt to analyze whether the parties' goods are complementary (meaning they are used or promoted together), or whether they are sold to the same consumers in its relatedness analysis. *Matrix Motor*, 290 F. Supp. 2d at 1092. In fact, as more fully discussed in HMH's Motion for Summary Judgment and accompanying Statement of Uncontroverted Facts, the parties' goods are not used or promoted together, nor are they sold to the same consumers. *See* HMH Motion at 9; HMH SUF 19, 28, 32-36, 48, 82-86, 89-103, 106; Thus, this factor weighs in HMH's favor.

### 3.     There Is No Similarity.

Edge Games' argument that its mark is similar to HMH's *ScienceFusion* textbook program by relying only on the import of the hyphen in the "Science-Fusion" part of its longer product name, lacks any relevant authority. None of the authorities cited by Edge Games address the likelihood of confusion. *Beech-Nut Packing Co. v. P. Lorillard Co*., 299  F. 834 (D.N.J. 1924) and *The Norwich Pharmacal Company v. Chas. Pfizer & Co., Inc*., 165 U.S.P.Q. 644 (T.T.A.B 1970), both discuss whether a mark was abandoned, and not whether marks are so similar as to cause confusion. The discussion of use of a hyphen in the mark at issue in *In re Noon Hour Food Products Inc*., 88 U.S.P.Q. 2d 1172, n.2 (T.T.A.B. 2008), addresses only whether the mark is generic, and has nothing to do with similarity.

More importantly, Edge Games ignores a critical element of the test for

13
OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
DWT 26602144v4 0096293-000007

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

determining the similarity of marks—namely that the marks must be considered "as they are encountered in the marketplace, taking into account the normal circumstances surrounding purchases of the type of goods they represent." *Matrix Motor*, 290 F. Supp. 2d at 1093 (citations omitted); *M2 Software Inc. v. Viacom, Inc.*, 421 F.3d 1073, 1082 (9th Cir. 2005).[6] As discussed more fully in HMH's Motion, the reality is that Edge Games' Science-Fusion The Elements of the Scienauts game and HMH's *ScienceFusion* textbook program neither look nor sound similar. HMH Motion at 10-11. Edge Games' product is labeled "Science-Fusion The Elements of the Scienauts The Game About the Periodic Table", emphasizing "Scienauts" as the primary name of the game in bold orange letters.[7] In contrast, HMH's *ScienceFusion* textbook series not only looks entirely different from Edge Games' product, including because of the way its product name is presented, but also because of the colors, fusion logo and presentation quality of the product itself. HMH SUF 11-17, 78-81. In addition, both products prominently display the names of the companies that produce them.  HMH SUF 13, 15, 80. The appearance of the housemarks, as well as the differences in the font sizes, full product names, and colors and presentation of the goods themselves, distinguish these products as very different as they are encountered in the marketplace, whether in sight or sound. *See, e.g.*, *Matrix Motor*, 290 F. Supp. 2d at 1093 (rejecting similarity of marks as parent company names appeared with the marks, making confusion unlikely); *Echo Drain*, 307 F. Supp. 2d at 1126 (no similarity given distinctive fonts and meaning of the Echo

---

[6] Edge Games does not even provide the Court with pictures of the relevant products to allow the Court to confirm that Edge Games' mark indeed has a hyphen, or that HMH's product does not, much less how the products appear as they are encountered in the marketplace, again demonstrating its failure to meet its burden on its own motion.

[7] In fact, many of the third party witnesses identified by Edge Games as having pertinent knowledge about sales of Edge Games' game identified Edge Games' product either by its more prominent "Scienauts" name or simply as the game about the periodic table.  *See* Declaration of Valerie Slaughter ¶ 2; Declaration of Tamsen Nash ¶¶ 3, 4; Declaration of Eliza Wingate ¶ 2; Declaration of Cheri Holden ¶ 2.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Drain and Echobrain band names).

As for Edge Games' assertion that the meaning of the product names is similar, it provides no citation to any evidence to support its argument about its asserted meanings for the parties' product names. While Edge Games cites out-of-circuit authority for the proposition that a dictionary definition may be relied upon to determine the meaning of marks, it notably does not provide the Court with any dictionary definition. *E.g., Hancock v. American Steel & Wire Co*, 203 F.2d 737, 933 (C.C.P.A. 1953) (noting appellee relied upon dictionary definitions he raised with the patent office). Edge Games' reliance on *Colgate-Palmolive Co v. Carter-Wallace, Inc.*, 432 F.2d 1400, 1402 (C.C.P.A. 1970), is curious because the court there rejected any likelihood of confusion after taking account of the different meanings of the involved marks "when applied to the specific goods of the parties and the different commercial impressions which would logically ensure therefrom…." HMH has already provided the Court with substantial evidence of the different meaning of the names chosen by the parties and the very different nature of the goods at issue in this case, which necessarily lead to different commercial impressions and are unlikely to create confusion among the relevant class of consumers for the goods. *See, e.g*., SGD 109-113; HMH SUF 18, 71, 73; HMH Motion at 11:16-20. There is no similarity, and Edge Games' argument to the contrary is simply that—naked argument.

### 4. There Is No Evidence of Any Actual Confusion.

By relying on Fifth Circuit authority, Edge Games attempts to gloss over the fact that actual confusion in the Ninth Circuit is only demonstrated through persuasive evidence that a <u>significant</u> number of the <u>actual consuming public</u> have been confused. *See Rearden LLC v. Rearden Commerce, Inc*., 683 F.3d 1190, 1210 (9th Cir. 2012); *Japan Telecom, Inc. v. Japan Telecom Am. Inc*., 287 F.3d 866, 874 (9th Cir. 2002) (holding evidence in the form of two attached letters and President's declaration lacking foundation insufficient evidence of actual confusion); *Echo*

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Drain*, 307 F. Supp. 2d at 1126 ("none of the evidence . . . suggests that members of the buying public would *mistakenly purchase* an Echo Drain product believing it was an Echobrain product or vice versa").

Edge Games' reliance on Ray Pelzel's statements during his deposition about emails he claims to have received from Amazon.com do not meet any of the standards set forth above for evidence of actual confusion, much less "significant" evidence as Edge Games claims. SGD 22-23. Pelzel never produced the emails he claims to have received, making it impossible to verify the accuracy of his claim or look to see what the emails actually said to determine if they would be indicative of source confusion. *See Network Automation,* 638 F.3d at 1152 ("the appearance of the advertisements and their surrounding context on the user's screen" are critical to a determination of actual confusion). Further, even if Ray Pelzel truly received emails from Amazon about HMH products, the emails would not constitute evidence of actual confusion among the purchasing public, as Pelzel is an owner of Edge Games, was not buying a game and clearly was not confused between the products, and thus his reaction to the emails is entirely non-probative to the issue of actual confusion.

Even if a customer actually did receive an email from Amazon about HMH products after buying or looking at Edge Games' game, that would be entirely irrelevant to any issue in this case in the absence of evidence that that consumer was actually confused about the sponsorship of Edge Games' product and mistakenly purchased one product over another based on that confusion. *Multi Time Mach., Inc. v. Amazon.com,* 926 F. Supp. 2d 1130, 1141 (C.D. Cal. 2013) (rejecting expert report suggesting consumers "may" be confused about why they were receiving certain search results, because the report did not address whether consumers in fact were confused as to source). Such evidence is entirely missing here. Edge Games' "inference" about what a consumer who purchases a product on Amazon does or does not receive from Amazon amounts to rank speculation. In fact, recent emails sent to counsel for HMH after purchasing two Science-Fusion The Elements of the

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Scienauts games from Amazon tend to suggest that, rather than receiving emails about HMH's *ScienceFusion* textbook program materials, consumers are likely to receive products about the periodic table of the elements. SGD 24. Certainly, Edge Games' speculation about what consumers receive from Amazon does not amount to evidence of actual confusion among actual purchasers of the product.

Nor is Andrew Leach's deposition testimony as Edge Games' 30(b)(6) witness about his efforts to sell Science-Fusion The Elements of the Scienauts at flea markets and small venues relevant to the issue of actual confusion.[8] SGD 25. Leach's testimony, in which he could not identify a single person by name or the precise date when he had a conversation, where he had no documentary evidence to support his testimony, and where he had no memory of whether he made any sales to the people with whom he claims to have spoken is utterly unreliable. *See Matrix Motor*, 290 F. Supp. 2d at 1093-94 ("MMC's CEO could not provide any further information, such as names of people who were allegedly confused, the dates of any inquiries, the nature of the alleged confusion, or any documentary evidence supporting MMC's allegations. MMC cannot substantiate its claims of actual confusion, which the Court finds to be unreliable and nothing more than inadmissible hearsay."). Insofar as Edge Games submits these out of court statements as evidence that these mystery people were confused as to the sponsorship of goods, those statements are inadmissible hearsay. Moreover, it is not even clear from Leach's testimony that these people who made "inquiries" were confused between the products in any relevant way, as Leach could not say whether they did or did not make a purchase. SGD 25. As such, Leach's testimony is entirely irrelevant to the question of actual consumer confusion. *Echo Drain*, 307 F. Supp. 2d at 1126 ("none of the evidence . . . suggests that members of the buying public would mistakenly purchase an Echo Drain product

---

[8] Contrary to Edge Games' argument, Leach did not testify that he talked to any consumers who made inquiries about his product and HMH's product at trade shows, garage sales or presentations at schools.  SGD 25.

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
DWT 26602144v4 0096293-000007

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

believing it was an Echobrain product or vice versa"); *James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.,* No. SACV 11-1309 DOC, 2013 WL 655314, at *9 (C.D. Cal. Feb. 21, 2013) (confusion about a mark that does not suggest members of the public would mistakenly purchase Defendant's product believing it was Plaintiff's product, or vice versa, is not relevant).

Given that HMH's *ScienceFusion* textbook program has been sold for four and a half years—since August 2010—"some evidence of actual confusion should have been available" if confusion were likely. *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 842-43 (9th Cir. 2002).  Edge Games' failure to show that any actual confusion has occurred or that it is likely to occur through the admission of survey evidence merits weighing this factor in HMH's favor. *See* HMH Motion at 12-13; HMH SUF 38-46.

### 5.      The Marketing Channels Do Not Overlap.

Edge Games improperly conflates the analysis of marketing channels with the analysis of the identity of the consumers that purchase each parties' products. The analysis is not the same. "Advertising, the existence of direct competition, and retail distribution are considered when addressing whether the parties use similar marketing channels. A finding that the parties advertise or distribute their products differently indicates a lesser likelihood of confusion." *Matrix*, 290 F. Supp. 2d at 1094 (citations omitted).

As set forth in detail in HMH's Motion, the parties' advertising and distribution channels are entirely separate for their two products.  HMH markets and sells its textbook program with the help of sales representatives directly to the states, school districts and school professionals who, typically by committee, make the decision to adopt and then purchase a new textbook program for a district and school. HMH Motion at 14-15. For example, HMH markets in a very targeted fashion through science teacher trade shows and by advertising through teacher convention programs. It is undisputed that Edge Games' marketing channels do not include these channels.  HMH SUF 89-95, 98-100.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Edge Games makes a variety of assertions in support of its argument, including about how parents search the secondary market for textbooks, about used textbooks on Amazon.com, and about how the parties both sell directly to parents, teachers, school administrators, home schooling parents, "other educators and through distributors", but none of these statements are supported by any citation to any evidence. SGD 26. Most critically from the marketing channel point of view, there is no evidence that any of Edge Games' Science-Fusion The Elements of the Scienauts games sell side by side with any HMH *ScienceFusion* textbook program materials through the same marketing channels to these alleged categories of consumers. *See Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1537 (9th Cir. 1989) (factor weighs against confusion where "the parties do not attend the same trade shows, and their products are not sold by the same retailers or displayed in adjacent areas"); HMH SUF 94-95, 98-99, 106.

Edge Games' reliance on *Piccolo Sportswear, Inc. v. Mast Industries, Inc.*, 227 U.S.P.Q. 710 (1985), is entirely misplaced, as that case involves the likelihood of confusion between a children's clothing line and a ladies' apparel line, both of which sell their products in retail department stores. In *Piccolo*, the court held that confusion was likely because "an appreciable number of purchasers"—namely women—were purchasers for both children's apparel and ladies' apparel. Edge Games simply has not introduced any evidence that an appreciable number of purchasers for its game overlap with HMH's textbook program customers, much less that they are targeted through the same marketing channels. Edge Games argues that both companies sell to parents and home schooling parents, however it has not introduced any evidence that an appreciable number of either its or HMH's purchasers fit within any of these categories, or which marketing channels either it or HMH uses to sell to these specific purchasers. In fact, as to HMH, the vast majority of its purchasers are not parents, but rather, school districts and schools through marketing channels that are entirely distinct from any marketing channel used by

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
DWT 26602144v4 0096293-000007

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Edge Games. Further, HMH's sales of its homeschool packages represent only 0.21%, or two tenths of one percent, of its gross sales of its textbook program. HMH SUF 102. That market is so de minimis that it does not constitute any basis for finding likelihood of confusion. *Learning Internet v. Learn.com*, 2009 WL 6059550, at * 25 (D. Or. Nov. 25, 2009) (holding theoretical possibility of confusion based on sales to individuals representing .1% of sales not a basis for likelihood of confusion).

As for Edge Games' assertion of the products appearing on the parties' respective websites and on Amazon.com, "[t]oday, it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion." It is simply not enough to point to the residence of both products somewhere on the Internet, or even both on Amazon.com, in order to establish sufficiently convergent marketing channels for this factor to weigh in Edge Games' favor. *See Network Automation*, 638 F.3d at 1151; *M2 Software,* 421 F.3d at 1084 (error to hold sales on Amazon alone was sufficient for a finding of overlap between marketing channels).

## 6. Type of Goods and Purchaser Care.

Edge Games asserts, again without evidentiary support, that neither HMH nor Edge Games' products are particularly expensive and that neither of their customers exercise care in the purchase of their respective products. Nothing could be further from the truth.

HMH's textbook program is quite expensive, representing a major investment for the schools and districts who purchase the program. As a K-8 curriculum, moreover, the decision to change to the *ScienceFusion* textbook program occurs across multiple grades, multiple schools, and multiple classrooms. SGD 112. Thus, the expense can equal hundreds of thousands of dollars. HMH SUF 88. HMH provided detailed evidence in its Motion, moreover, of the process through which states, schools and districts make such decision to buy a new textbook program, and the care they bring to such decisions. *Sleekcraft*, 599 F.2d at 353 ("When the buyer

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

has expertise in the field, a higher standard [for assessing purchaser care] is proper…"); *Learning Internet*, 2009 WL 6059550, at *25 (care in school curriculum purchase weighs against infringement); HMH SUF 86, 88.

Nor is there any support for Edge Games' assertion that its own customers lack care and diligence in their purchasing decisions, or that its own product is inexpensive. SGD 27. In fact, those customers who have reviewed Edge Games' Science-Fusion The Elements of the Scienauts game on game review websites such as boardgamegeek.com and on Amazon.com appear to have carefully reviewed the game, including at game conventions, before buying. HMH SUF 24-27. Some have commented that the game is expensive for what it is, given the fact that in order to purchase a complete game set, the starter game set and multiple faction packs must be purchased. HMH SUF 25. Thus, the total game price is $100 or more once all faction packs are purchased. HMH SUF 8-10. Edge Games has no support for any contrary assertion, as it relies entirely on the unsigned declaration of Tim Pelzel, who summarily concludes only that one part of its game sells for $29. SGD 27. No evidence supports Edge Games' assertion of its customers' lack of care in their purchasing decisions. In short, this factor weighs in favor of HMH.

### 7.    There Is No Evidence of Intent.

Edge Games submits no admissible evidence that HMH acted with the intent to knowingly adopt a trademark similar to Edge Games' Science-Fusion The Elements of the Scienauts game when it decided to call its textbook program *ScienceFusion.* That is because there is no such evidence. The only admissible evidence submitted to date is HMH's submission on its Motion, which indisputably shows HMH had no knowledge of either Edge Games or its game at the time it selected its title for its textbook program, or at any point thereafter, until it received a demand letter in February 2012.[9]  HMH SUF 74-75. Thereafter, HMH conducted an

_____

[9] Insofar as Edge Games appears to criticize HMH's decision to adopt the *ScienceFusion* title as "incredulous"—presumably intende to mean "incredibly"—

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
DWT 26602144v4 0096293-000007

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

investigation of Edge Games and whether it was selling any products with Science-Fusion as a brand, and determined the company appeared to be out of business. No website for the company existed in February 2012, and indeed, Edge Games' website had been offline since 2009. No live contact information appeared for the company. No games were available for sale from the company.  HMH SUF 29, 76-77.

Once HMH was able to acquire a game, it also became readily apparent how different Edge Games' product was from the textbook program that HMH markets to school systems. "Infringement is not willful if the defendant might have reasonably thought that its proposed usage was not barred by the statute." *Matrix Motor*, 290 F. Supp. 2d at 1095 (citing *SecuraComm Consulting Inc. v. Securacom Inc.*, 166 F.3d 182, 188 (3d Cir. 1999)). Edge Games' brief betrays a basic misunderstanding of trademark law, in that it appears to believe it has a monopoly on a mark in any context and without regard to likelihood of confusion among relevant consumers. However, a trademark does not confer a monopoly; "the Lanham Act and its legislative history reveals no congressional design to bestow such broad property rights on trademark owners." *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 918-19 (9th Cir. 1980) (citation omitted). Given the stark differences in the nature of Edge Games' game and HMH's textbook program, the class of consumers to which they sell, their different marketing channels, price points, different product packaging and presentation of the marks in the context of their products, and the lack of any evidence of actual confusion in all the time the products have coexisted, there is nothing "incredible" or intentional about HMH's decision to use *ScienceFusion* on its textbook program.

Nor is the fact that Edge Games is pursuing its claims against HMH under a reverse confusion analysis particularly relevant to the issue of intent. In fact, because

---

Edge Games' efforts to cast aspersions on the credibility of HMH's witnesses is not appropriately the subject of a motion for summary judgment. *Eidem v. Target Corp.*, No. EDCV 10-01000 VAP, 2011 WL 3756144, at *4 n. 3 (C.D. Cal. Aug. 24, 2011).

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
DWT 26602144v4 0096293-000007

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

the inquiry into intent seeks to determine whether the junior user adopted its mark to capitalize on the senior user's reputation and goodwill, the intent inquiry "plays a less critical role in a reverse confusion case." *Stark,* 907 F. Supp. 2d at 1063; *Machine Head v. Dewey Global Holdings, Inc.,* No. 99-04326 CW, 2001 U.S. Dist. LEXIS 22759, at * 33 (N.D. Cal. Dec. 18, 2001) (intent not relevant in reverse confusion case).  That is because, in a typical trademark case, the junior user is attempting to trade off the better known mark of the senior user, which is not the case here, according to Edge Games' own argument. *Sleekcraft,* 599 F.2d at 354.

    Nor is it the case that HMH's adoption of *ScienceFusion* has "swamped" Edge Games' mark. There is simply no evidence that saturation of the market has occurred. Edge Games relies on the declaration of Tim Pelzel for the assertion that Internet searches for Edge Games' mark result in several pages of hits for HMH. Not only is Pelzel's declaration not signed, but none of these supposed "internet searches" are attached to the declaration. It is thus impossible to know what searches were conducted, on what search engines, and what the search yielded in terms of results. Nor is such prevalence, if it exists, at all relevant to the critical issue in reverse confusion analysis, and that is whether consumers of Edge Games become confused as to the source of Edge Games' goods. *Quia Corp. v. Mattel, Inc.,* No. C 10-1902 JF HRL, 2011 WL 2749576, at *3 (N.D. Cal. July 14, 2011) ("The mere fact that an internet search engine intermingles links to two products is not evidence of consumer confusion."). Importantly, of all of the third party witnesses whom Edge Games identified as having knowledge of "customer confusion", not one was confused between the products, or had even heard of HMH's *ScienceFusion* textbook! HMH SUF 45-46, 104.

    Finally, even if HMH had "swamped" the market—which it has not—such evidence would not be a substitute for showing actual evidence of intent. Nor would it be fair to say that HMH is in any way responsible for the lack of Edge Games' name recognition for its game. Edge Games' game has never been successful. Given

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
DWT 26602144v4 0096293-000007

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

its lengthy suspension of its website and its failure to pay any money to advertise its game since 2009, it is not surprising that sales of its game precipitously declined long before HMH entered the marketplace with its *ScienceFusion* program in late 2010. HMH SUF 22, 29. Suggesting that HMH somehow saturated a market that Edge Games has not actively attempted to exploit since 2009 is a stretch.

### 8. There Is No Likelihood of Expansion.

Edge Games has offered no evidence that it will be expanding into textbooks, or that HMH intends to expand beyond a K to 8 textbook program. Its only evidence of expansion is its claims about efforts to publish "literature", including two fictional books and a screenplay. SGD 12-13. However, those efforts have not led to any concrete expansion into books of fiction in the over 9 years since Edge Games' began offering it game for sale, and the proposed books are only in draft form. It is not enough for Edge Games merely to express interest in expanding, or speculating that it might do so one day. *Surfvivor Media*, 406 F.3d at 63 ("[Plaintiff's] complete inability to adduce any concrete evidence of expansion plans tilts this factor in favor of [defendant]."); *see also Stonefire Grill*, 987 F. Supp. 2d at 1056.

Furthermore, Tim Pelzel's publication of a short story in a larger anthology entitled "Of Dice and Pen" is equally irrelevant to the question of Edge Games' expansion efforts. SGD 13. Notably, Tim Pelzel—not Edge Games—is the author. Simply using "Science-Fusion" in a short story title affords neither Tim Pelzel nor Edge Games any trademark rights, as the title of a single book cannot be a trademark, much less a short story in a larger work. *Spin Master, Ltd. v. Zobmondo Entertainment, LLC*, 944 F. Supp. 2d 830, 853 (C.D. Cal. 2012) (citing *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1162-63 (Fed. Cir. 2002).

Finally, even if Edge Games had concrete plans to publish fictional books with titles that include the term "Science-Fusion," it fails to explain why fictional book titles are sufficiently similar to a science textbook program sold to schools and school

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

districts such that likelihood of confusion would result. This factor weighs in HMH's favor, as do all the other factors of the *Sleekcraft* analysis.

## IV.   NO LIKELIHOOD OF CONFUSION EXISTS.

Edge Games' final argument in its effort to secure summary judgment on its first claim is to urge the Court to ignore the *Sleekcraft* analysis, and simply look at the parties' products and make a determination of infringement. However, it is not the law of the Ninth Circuit that the *Sleekcraft* analysis may be simply ignored. *M2 Software*, 421 F.3d at 1080. In fact, to prevail on the ultimate question of whether likelihood of confusion of consumers exists, Edge Games "must show sufficient evidence to permit a rational trier of fact to find that confusion is 'probable,' not merely possible." *Id.* at 1085.

Edge Games did not make <u>any</u> admissible evidentiary showing necessary to prove that it is entitled to summary judgment on the issue of liability.  Given Edge Games' failure to submit admissible evidence, its reliance on an unsigned declaration filled with unsubstantiated conclusions, its failure to submit authenticated exhibits and admissible evidence in support of its legal arguments, and its failure to point the Court to citations of relevant evidence or legal authority, Edge Games' motion must be denied. Given HMH's strong showing on each of the eight *Sleekcraft* factors in its own Motion that there is no likelihood of confusion between these two very different products, summary judgment in favor of HMH is appropriate in this case.

DATED: April 13, 2015

DAVIS WRIGHT TREMAINE LLP
STUART R. DUNWOODY (*pro hac vice*)
CARLA A. MCCAULEY
DIANA PALACIOS


By:_____/s/Carla A. McCauley_____
         Carla A. McCauley
Attorneys for Defendant and Counter Claimant
HOUGHTON MIFFLIN HARCOURT
PUBLISHING COMPANY

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
DWT 26602144v4 0096293-000007

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899