O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| EDGE GAMES, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, | ) ) ) ) | Case No. EDCV 13 02123 VAP (DTBx) |
|---|---|---|
| Plaintiff, | ) ) | **ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING** |
| v. | ) ) ) | **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| HOUGHTON MIFFLIN HARCOURT PUBLISHING COMPANY, A MASSACHUSETTS CORPORATION; AND DOES 1 - 10, | ) ) ) ) ) ) | **[Motions filed on 4/6/15]** |
| Defendants. | ) | |

Before the Court are the parties' cross motions for summary judgment or partial summary judgment. For the reasons stated below, Plaintiff's motion is DENIED and Defendant's motion is GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

Plaintiff Edge Games produces and sells a game based on the periodic table of the elements, known as "Science Fusion the Elements of the Scienauts." ("Scienauts game") Defendant Houghton Mifflin Harcourt ("HMH") publishes a

line of science textbooks designed for kindergarten through eighth grade called "ScienceFusion."

On November 19, 2013, Plaintiff filed suit against Defendant, alleging trademark infringement and false advertising based on Defendant's use of the name "ScienceFusion." ("Complaint," Doc. No. 1 at 1.)  On April 6, 2015, Plaintiff filed a motion for summary judgment on the issue of likelihood of confusion (i.e. infringement).  ("P.'s MSJ," Doc. No. 45 at 2.)  On the same day, Defendant filed a motion for summary judgment on three issues:

1. Likelihood of confusion (i.e. infringement)

2. Damages

3. Liability for false advertising

("D.'s MSJ," Doc. No. 41 at 1.)

Defendant filed an opposition to Plaintiff's motion for summary judgment on April 13, 2015.  Plaintiff did not submit a reply to Defendant's opposition.

Plaintiff did not submit an opposition to Defendant's motion for summary judgment.  Treating Plaintiff's own motion for summary judgment on the issue of infringement as an implicit partial opposition to Defendant's motion for summary judgment, Defendant filed a reply on April 20, 2015.  The Court follows suit in construing Plaintiff's motion for summary judgment on the issue of infringement as an opposition to Defendant's motion as to the same issue.

## II. LEGAL STANDARD

A motion for summary judgment or summary adjudication shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 48 (1986).  The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict."  Anderson, 477 U.S. at 250.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment. Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998); Retail Clerks Union Local 648 v. Hub Pharmacy, Inc., 707 F.2d 1030, 1033 (9th Cir. 1983).  The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Where the non moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non moving party's case.  Celotex, 477 U.S. at 325. Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the non moving party's case.  Id.

The burden then shifts to the non moving party to show that there is a genuine issue of material fact that

1   must be resolved at trial.  Fed. R. Civ. P. 56(e);
2   Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 256.  The
3   non moving party must make an affirmative showing on all
4   matters placed in issue by the motion as to which it has
5   the burden of proof at trial.  Celotex, 477 U.S. at 322;
6   Anderson, 477 U.S. at 252.  See also William W.
7   Schwarzer, A. Wallace Tashima & James M. Wagstaffe,
8   Federal Civil Procedure Before Trial § 14:144.  "This
9   burden is not a light one.  The non moving party must
10  show more than the mere existence of a scintilla of
11  evidence."  In re Oracle Corp. Securities Litigation, 627
12  F.3d 376, 387 (9th Cir. 2010) (citing Anderson, 477 U.S.
13  at 252).

14      A genuine issue of material fact will exist "if the
15  evidence is such that a reasonable jury could return a
16  verdict for the non moving party."  Anderson, 477 U.S. at
17  248.  In ruling on a motion for summary judgment, a court
18  construes the evidence in the light most favorable to the
19  non moving party.  Barlow v. Ground, 943 F.2d 1132, 1135
20  (9th Cir. 1991); T.W. Elec. Serv. Inc. v. Pac. Elec.
21  Contractors Ass'n, 809 F.2d 626, 630 31 (9th Cir. 1987).

22                       **III. DISCUSSION**
23  **A.   Likelihood of Confusion**
24      Infringement of federally registered trademarks is
25  governed by the test of whether Defendant's use is
26  "likely to cause confusion, or to cause mistake, or to
27  deceive."  15 U.S.C. § 1114(1)(a).  In determining
28

1  whether confusion is likely, the following factors are
2  relevant:
3      1.   strength of the mark;
4      2.   proximity of the goods;
5      3.   similarity of the marks;
6      4.   evidence of actual confusion;
7      5.   marketing channels used;
8      6.   type of goods and the degree of care likely to
9           be exercised by the purchaser;
10     7.   defendant's intent in selecting the mark; and
11     8.   likelihood of expansion of the product lines.
12  AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348 49 (9th
13  Cir. 1979).
14      The Court considers each of the Sleekcraft factors in
15  turn below.
16      **1.   Strength of the Mark**
17      Marks are grouped into classifications, with each
18  classification receiving a different level of protection.
19  "A strong mark is inherently distinctive, for example, an
20  arbitrary or fanciful mark; it will be afforded the
21  widest ambit of protection from infringing uses."
22  Sleekcraft, 599 F.2d at 349.  "A descriptive mark tells
23  something about the product; it will be protected only
24  when secondary meaning is shown."  Id.  "In between lie
25  suggestive marks which subtly connote something about the
26  products.  Although less distinctive than an arbitrary or
27  fanciful mark and therefore a comparatively weak mark, a
28

1  suggestive mark will be protected without proof of

2  secondary meaning."  Id.

3      The parties agree that the mark at issue is

4  suggestive, falling between a purely fanciful and a

5  purely descriptive mark.  (D.'s MSJ at 7; P.'S MSJ at 7.)

6  As a suggestive mark, it is entitled to protection

7  without proof of secondary meaning, but "it is a weak

8  mark entitled to a restricted range of protection.  Thus,

9  only if the marks are quite similar, and the goods

10  closely related, will infringement be found."  Sleekcraft

11  at 350.

12      **2.  Proximity of the Goods**

13      "For related goods, the danger presented is that the

14  public will mistakenly assume there is an association

15  between the producers of the related goods, though no

16  such association exists.  The more likely the public is

17  to make such an association, the less similarity in the

18  marks is requisite to a finding of likelihood of

19  confusion."  Sleekcraft at 350 (internal citations

20  omitted).  This factor thus requires looking at whether

21  the products "would reasonably be thought by the buying

22  public to come from the same source if sold under the

23  same mark."  Id. at 348 n.8.  This is more likely to

24  occur when the parties' goods are (1) complementary, (2)

25  sold to the same class of purchasers, or (3) are similar

26  in use or function.  Id. at 350.

27

28

1   Defendant argues that the goods at issue here are
2   unrelated because (1) the goods are not promoted or sold
3   together, (2) the primary purpose of the Scienauts game
4   is fun while HMH's product is a science curriculum, and
5   (3) the parties do not target the same class of
6   purchasers.  Plaintiff, on the other hand, argues that
7   both products are designed to educate students about
8   science and are therefore complementary.
9   The Court concludes that a genuine dispute of fact
10  exists as to whether the goods would reasonably be
11  thought by the buying public to come from the same source
12  if sold under the same mark.  A jury could reasonably
13  find that a consumer might mistakenly believe that the
14  Scienauts game is a complementary product to HMH's
15  textbooks, intended to supplement the curriculum with an
16  additional educational medium.
17  **3.  Similarity of the Marks**
18  "Similarity of the marks is tested on three levels:
19  sight, sound, and meaning.  Each must be considered as
20  they are encountered in the marketplace."  <u>Sleekcraft</u> at
21  351 (internal citations omitted).  Each level of
22  similarity is considered in turn below.  The Court
23  concludes that a dispute of fact exists whether the marks
24  are similar enough to cause a likelihood of confusion,
25  because the various levels on which similarity is tested
26  weigh in different directions regarding the likelihood of
27  confusion analysis.
28

**a. Sight**

The following are examples of Plaintiff's mark as encountered on its Scienauts game.





The following are examples of Defendant's mark as encountered on its line of textbooks.



8

1  From a visual perspective, the marks do appear quite
2  different.  They use radically different color schemes
3  and, although the first example of Plaintiff's mark has
4  "Science Fusion" in a sans serif font, like Defendant's,
5  Plaintiff's mark appears in all caps or small caps, while
6  Defendant's mark appears in lowercase letters, except for
7  the 'f' of "Fusion."

8  Plaintiff's mark includes a hyphen between "Science"
9  and "Fusion," while Defendant's mark does not.  As
10 Plaintiff points out, however, the visual impact of this
11 difference is relatively minimal.

12 Defendant's mark also includes the publisher's name
13 in some instances, which helps to prevent confusion,
14 though it is not present in every instance.  On the
15 whole, the visual differences between the marks weigh
16 against a finding of likelihood of confusion.

17              **b.   Sound**

18 "Sound is also important because reputation is often
19 conveyed word of mouth."  Sleekcraft at 351.  Plaintiffs
20 are correct that, because the only lexical difference
21 between the marks is the presence of a hyphen in
22 Plaintiff's mark, the two marks sound identical.
23 Accordingly, the audible similarity between the marks
24 weighs in favor of a finding of likelihood of confusion.

25              **c.   Meaning**

26 With respect to similarity on the level of meaning,
27 neither party has suggested that the introduction or
28

elimination of a hyphen between "science" and "fusion"
alters the meaning of the phrase in any way so as to
reduce the likelihood of confusion.  Accordingly, the
similarity in meaning between "Science Fusion" and
"ScienceFusion" weighs in favor of a finding of
likelihood of confusion.

**4. Evidence of Actual Confusion**

"Evidence that use of the two marks has already led
to confusion is persuasive proof that future confusion is
likely." <u>Sleekcraft</u> at 352.  Nevertheless, "[b]ecause of
the difficulty in garnering such evidence, the failure to
prove instances of actual confusion is not dispositive.
Consequently, this factor is weighed heavily only when
there is evidence of past confusion...."  <u>Id.</u> at 353
(internal citations omitted).

HMH is correct that EG's showing of actual confusion
is quite weak, consisting of little more than anecdotes
of a few customers asking if the products were related
and testimony that Amazon's marketing algorithm
considered them to be related products for purposes of
marketing emails.  As the absence of proof on this factor
is normally given relatively little weight, however, this
factor does not weigh heavily in favor of either side.

**5. Marketing Channels Used**

"Convergent marketing channels increase the
likelihood of confusion," because it means "the general
class of [consumers] exposed to the products overlap."

Sleekcraft at 353.  Evidence that the parties advertise or distribute their products differently indicates a lesser likelihood of confusion.

The record shows that overlap in marketing channels, while minimal, is not non existent.  (See, e.g., "Pelzel Depo.," Doc. No. 41 2, Ex. 15 at 182:17 25; "Smith Herbst Decl.," Doc. No. 41 1 at ¶ 16.)  Thus, while the evidence does appear to weigh in Defendant's favor on this factor, the evidence is not so conclusive as to merit summary judgment for Defendant.

**6.    Type of Goods and the Degree of Care Likely to be Exercised by the Purchaser**

"In assessing the likelihood of confusion to the public, the standard used by the courts is the typical buyer exercising ordinary caution.  Although the wholly indifferent may be excluded, the standard includes the ignorant and the credulous.  When the buyer has expertise in the field, a higher standard is proper though it will not preclude a finding that confusion is likely.  Similarly, when the goods are expensive, the buyer can be expected to exercise greater care in his purchases; again, though, confusion may still be likely."  Sleekcraft at 353 (internal citations omitted).

The uncontroverted evidence is that elementary school textbooks are generally chosen by committees of teachers and other school professionals with expertise in the field.  (Smith Herbst Decl. at ¶ 10.)  Additionally, the

11

adoption of new textbooks represents a significant financial investment for most schools, often involving a multi year commitment.  (Smith Herbst Decl. at ¶ 17.) This weighs heavily against a finding of likelihood of confusion with respect to purchasers of HMH's product.

EG's Scienauts game, on the other hand, costs only $29 for a starter kit with expansion packs costing $7 each.  ("Leach Depo.," Doc. No. 41 2, Ex. 14 at 95:12 96:21.)  This is not a significant financial investment compared to many educational costs.  It is not at all difficult to imagine a parent seeing a copy of EG's Scienauts game in a game store and relying on the "Science Fusion" mark on the game to infer that it is associated with his or her child's science textbook manufacturer, perhaps concluding that it is a supplemental educational material that could enrich the child's science curriculum.  The cost of Plaintiff's product is not so high as to make significant research on the manufacturer of the game likely.

Accordingly, there is evidence cutting both ways on the issue of the degree of care likely to be exercised by the ordinary consumer, making summary judgment inappropriate.

**7.  Defendant's Intent in Selecting the Mark**

"When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the

public will be deceived.  Good faith is less probative of the likelihood of confusion...." <u>Sleekcraft</u> at 354 (internal citations omitted).  There is no evidence here that Defendant had any awareness of Plaintiff's mark or that Defendant had any intent to capitalize on a similarity to Plaintiff's mark in designing its own mark. Rather, the overwhelming evidence suggests that Defendant chose the mark in good faith.  But since good faith is less probative of likelihood of confusion, this factor does not weigh heavily in favor of either party.

   **8.   Likelihood of Expansion of the Product Lines**

   "Inasmuch as a trademark owner is afforded greater protection against competing goods, a 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." <u>Sleekcraft</u> at 354.

   Here, there is no evidence that EG intends to expand its business to include textbooks, nor is there any evidence that HMH intends to expand its business beyond textbooks.  Accordingly, there does not appear any realistic possibility that the parties' products will come into direct competition, and this factor weighs against a finding of likelihood of confusion.

   After considering the <u>Sleekcraft</u> factors, the Court concludes that, although it is a close call, there is a triable issue of fact as to whether the Defendant's mark presents a likelihood for confusion.  While much of the

13

1  evidence tips in Defendant's favor, a reasonable jury

2  could decide that, in light of the similarities between

3  the marks and the purposes for which the products are

4  used, consumers might be confused into thinking that both

5  products come from the same producer.  Accordingly,

6  summary judgment is inappropriate as to this issue.

7  **B.   Damages**

8        Defendant seeks partial summary judgment that

9  Plaintiff is not entitled to monetary relief because it

10  has suffered no damages as a result of Defendant's

11  alleged trademark infringement and Defendant has made no

12  profits on the alleged infringing products to warrant

13  disgorgement.  Plaintiff has not submitted an opposition

14  to this motion, so if Defendant has met its burden of

15  showing an absence of dispute of material fact, it is

16  entitled to summary judgment on this issue.

17       A prevailing plaintiff in a trademark infringement

18  case is entitled to recover damages actually sustained by

19  the plaintiff as well as the defendant's profits.  15

20  U.S.C. § 1117(a).  HMH argues that it is entitled to

21  summary judgment on both issues.

22       **1.   Damages Sustained by Plaintiff**

23       "When seeking damages, a plaintiff must prove both

24  the fact and the amount of damage."  Intel Corp. v.

25  Terabyte Int'l, Inc., 6 F.3d 614, 620 (9th Cir. 1993).

26  Actual damages in an action for trademark infringement

27  "are typically measured by any direct injury which a

28

plaintiff can prove, as well as any lost profits which the plaintiff would have earned but for infringement." Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1407 (9th Cir. 1993).

With respect to lost profits, Defendant points to the lack of any evidence of lost profits, as well as the deposition testimony of EG's 30(b)(6) representative that he did not know if EG had lost any profits as a result of HMH's alleged infringement. (See Leach Depo. at 256:11 14.) This is sufficient to meet Defendant's burden as the party moving for summary judgment, and Plaintiff has not submitted any opposition. Accordingly, summary adjudication that Plaintiff has suffered no lost profits as a result of Defendant's alleged infringement is appropriate.

With respect to other direct injuries Plaintiff may have suffered, the only direct injury claimed by EG is lost goodwill. (See Leach Depo. at 268:23 69:3.) Defendant points to the lack of evidence of the value of any alleged lost goodwill, including EG's failure to procure an expert report on the issue of damages. ("McCauley Decl.," Doc. No. 41 1 at *34, ¶ 20.) Defendant has met its burden as the moving party of showing the absence of a genuine issue of material fact, and Plaintiff has not submitted any opposition. Accordingly, summary adjudication that Plaintiff cannot

1  prove the monetary value of any alleged lost goodwill is
2  appropriate.

3      **2.   Defendant's Profits**

4      "In assessing profits the plaintiff shall be required
5  to prove defendant's sales only; defendant must prove all
6  elements of cost or deduction claimed."  15 U.S.C. §
7  1117(a).  HMH has submitted evidence that it has earned
8  no profit from its ScienceFusion textbook series, and
9  that indeed it has incurred a loss.  (Smith Herbst Decl.
10 at ¶ 18; "Pampinella Decl.," Doc. No. 41 4 at *7, ¶¶ 50
11 51.)  Plaintiff has offered no expert evidence to dispute
12 any of the opinions offered by HMH's accounting expert
13 regarding HMH's lack of profit on the accused product.
14 (McCauley Decl. at ¶ 20.)

15     Defendant has met its burden as the moving party to
16 show the absence of a genuine dispute of material fact,
17 and Plaintiff has not submitted any opposition.
18 Accordingly, summary judgment that Defendant has earned
19 no profits on the accused product is appropriate.

20 **C.   False Advertising**

21     Defendant seeks summary adjudication as to
22 Plaintiff's false advertising claim.  Plaintiff has not
23 submitted an opposition to this motion, so if Defendant
24 has met its burden of showing an absence of dispute of
25 material fact, it is entitled to summary judgment on this
26 issue.

27
28

1   Plaintiff's complaint alleges that Defendant's use of
2   Plaintiff's trademark "misrepresents Defendant's goods in
3   that it tends to lead consumers to believe they are
4   dealing with Plaintiff's game and/or a variation
5   thereof." ("Compl.," Doc. No. 1 at ¶ 34.)  Defendant
6   points to two essential elements of Plaintiff's claim on
7   which there is a complete absence of evidence.

8   First, Defendant points out there is no evidence that
9   any consumer believed HMH's textbooks were sponsored by
10  or associated with EG or the Scienauts game.  (See, e.g.,
11  Smith Herbst Decl. at ¶ 18.)  Defendant's position is
12  corroborated by EG's 30(b)(6) testimony.  EG's
13  representative stated that EG's customers questioned
14  whether EG had the right to use the Science Fusion mark,
15  but did not testify that anyone believed HMH's product
16  was affiliated with EG.  Accordingly, there is no
17  evidence to suggest that Defendant's use of the mark
18  tends to lead consumers to believe HMH's product is
19  associated with Plaintiff's game.[1]

20  Second, Defendant points out that, even if consumers
21  did believe HMH's textbooks were associated with EG,
22  Plaintiff has presented no evidence of actual harm caused

23  _____

24  [1] This conclusion is not in conflict with the Court's
    decision regarding the likelihood of confusion, as
25  Plaintiff's trademark infringement theory is centered on
    the allegation that consumers are likely to believe that
26  Plaintiff's product is associated with Defendant, not
    vice versa.  (See, e.g., P.'s MSJ at 12 13 ("This is a
27  reverse confusion case.... Reverse confusion is the
    misimpression that the junior user is the source of the
28  senior user's goods.").)

17

by that deception.  Plaintiff's only evidence of
reputational harm caused by Defendant's use of the
ScienceFusion mark is testimony that "[o]ur potential
customers wonder if we have the right to use science
fusion or if we are some kind of a knockoff company or
imposter."  (Leach Depo. at 269:6 8.)  Even assuming this
is sufficient evidence of reputational harm, it does not
establish that the reputational harm results from
consumers believing that they are "dealing with
Plaintiff's game and/or a variation thereof" when
purchasing HMH's textbooks.

     Indeed, EG's testimony regarding reputational harm
contradicts the allegation that consumers believe
Defendant's textbooks is associated with Plaintiff's
game.  EG's testimony shows that consumers know the
products are separate, but mistakenly believe that HMH
owns the trademark to ScienceFusion and that EG might be
infringing that mark.  Plaintiff points to no evidence
suggesting that consumers believe HMH's textbooks are
associated with or derivative of EG's Scienauts game.

     Thus, Defendant has met its initial burden of showing
the absence of a genuine dispute of material fact.
Plaintiff has not filed any opposition.  Accordingly,
summary judgment in favor of Defendant on Plaintiff's
false advertising claim is appropriate.

**IV. CONCLUSION**

For the reasons discussed above, Plaintiff's motion for partial summary judgment is DENIED; Defendant's motion for summary judgment is DENIED as to the issue of likelihood of confusion; and Defendant's motion for partial summary judgment is GRANTED as to the issue of monetary damages and as to Plaintiff's false advertising claim.

Dated:  June 2, 2015

VIRGINIA A. PHILLIPS
United States District Judge